**ATHINA INVESTMENTS LIMITED, et al., Plaintiffs**

v.

**Victor PINCHUK, Victor Vekselberg, et al., Defendants.**

**No. CIV.A. 06–10560–EFH.**

United States District Court, D. Massachusetts.

Aug. 9, 2006.

Donald K. Stern, Bingham McCutchen LLP, Mark E. Robinson, Bingham McCutchen LLP, Boston, MA, for Plaintiffs.

Michelle R. Peirce, Donoghue, Barrett & Singal, PC, Boston, MA, Dwight A. Healy, White & Case LLP, Paul B. Carberry, White & Case LLP, New York City, Sarah P. Kelly, Nutter, McClennen & Fish, LLP, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER

HARRINGTON, Senior District Judge.

### INTRODUCTION

This matter is before the Court on plaintiffs'[1] Motion to Enjoin Defendant Victor Vekselberg From Pursuing an Interdictory Foreign Matter. Two separate actions set the backdrop for plaintiffs' motion. The first action originated in this Court on March 30, 2006, when the plaintiffs filed a six-count Complaint alleging that several defendants, Victor Vekselberg among them, violated the Racketeer Influenced Corrupt Organization Act, 18 U.S.C. § 1961 *et seq.* ("the Massachusetts action"). The day after plaintiffs filed their Complaint, the Russian business periodical *Vedomosti* ran a story describing the Massachusetts action and allegations of corruption made therein. Mr. Vekselberg was featured prominently in the article. In the wake of the *Vedomosti* article, Renova Management, a Swiss company controlled by Defendant Vekselberg, filed a commercial defamation action in an Arbitration Court in Moscow, Russia ("the Moscow action"). The defendants named in the Moscow action include *Vedomosti* and Igor Kolomoisky. Mr. Kolomoisky is a beneficial owner of each of the three plaintiff-corporations in the Massachusetts action. Thus, according to the plaintiffs, the Moscow action is nothing more than a backdoor attempt—orchestrated by Mr. Vekselberg—to subvert their Massachusetts action by placing extreme financial pressure on Mr. Kolomoisky. Plaintiffs' motion asks this Court to issue an international antisuit injunction barring Defendant Vekselberg from litigating the Moscow action. For the reasons discussed in more detail below the plaintiffs' motion must, at this time, be denied.

### BACKGROUND

*The Massachusetts Action.* The plaintiffs in the Massachusetts action own approximately ten-percent of the issued and outstanding shares of the Nikopol Ferro–Alloy Plant ("Nikopol"). Nikopol is located in Ukraine (formerly the Soviet Union) and currently operates as the world's second largest producer of ferroalloys.[2] Though originally founded as a state-owned company, Nikopol has, since 1994, undergone gradual privatization. At all times since October, 2000, one or more of the plaintiffs have owned shares in Nikopol. The defendants in the Massachusetts action include several individuals and corporations; some are American, others re-

---

1. The named plaintiffs in this case include three foreign business associations: Athina Investments Ltd. (Belize), Varkedge Ltd. (Cyprus), and Wisewood Holdings Ltd. (Cyprus). For simplicity's sake, all three are hereinafter collectively referred to as "the plaintiffs" or "the Massachusetts plaintiffs."

2. Ferroalloys are various alloys of iron smelted with one or more other elements, such as manganese or silicon, and used as a raw material in the production of steel.

side or are located overseas. Plaintiffs allege that the individual defendants engaged in a racketeering scheme to control and loot Nikopol by diverting hundreds of millions of dollars of Nikopol's profits for their own benefit. The specific means by which the defendants are alleged to have carried out this scheme, though important to the overall resolution of this case, are not vitally pertinent to the disposition of the instant motion, and therefore will not be described here at any great length. The gravamen of the plaintiffs' allegations, though, appears to be that the individual defendants caused Nikopol to enter into collusive and grossly unfavorable contracts with business entities the defendants themselves controlled, thereby siphoning off Nikopol's profits and harming Nikopol's shareholders. (*See* Pls.' Compl. (Docket No. 1) at ¶¶ 44–57). Plaintiffs allege this scheme violated the Racketeer Influenced Corrupt Organization Act, 18 U.S.C. § 1961 *et seq.*, thus entitling them to damages and equitable relief. (*Id.* at ¶¶ 114–152)

*The Moscow Action.* As mentioned above, shortly after plaintiffs filed their Complaint in the Massachusetts action, the Russian business periodical *Vedomosti* ran a story ("the *Vedomosti* article" or "the article") detailing plaintiffs' allegations of corruption. The article, titled "Conspiracy for the Purpose to Bribe," reported that Defendant Vekselberg had been accused of acting in concert with Massachusetts co-defendants Victor Pinchuk and Alexander Abramov to bribe Ukranian government officials who were working to reverse the privatization of the Nikopol plant. The article also briefly identified Mr. Vekselberg as a co-owner of the Swiss company Renova Management ("Renova"). As a result, Renova sued *Vedomosti* and Igor Kolomoisky for commercial defamation in a Russian Arbitration Court. The theory behind Renova's Moscow action seems to be that even though the *Vedomosti* article makes no direct accusations of Renova as a company, an article so defamatory of Mr. Vekselberg is, because of his close affiliation with Renova, practically no different.

Plaintiffs have asked this Court to enjoin Defendant Vekselberg from pursuing the Moscow action because, in their view, the Moscow action is nothing more than a baseless exercise in legal gamesmanship. Specifically, plaintiffs argue that Vekselberg is the true party in interest in the Moscow action, and that he used Renova merely as a proxy to thwart plaintiffs' willingness and financial ability to continue on with the Massachusetts action. A thorough review of the parties' memoranda and supporting documentation reveals that the plaintiffs may indeed be correct. At this juncture and for the reasons discussed in detail below, however, the Court must deny the plaintiffs' request.

### ANALYSIS

It is well-settled that federal courts have the power to enjoin those subject to their personal jurisdiction from pursuing litigation before foreign tribunals. *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren,* 361 F.3d 11, 16 (1st Cir. 2004) (citing cases). However, American courts observe a presumption in favor of concurrent jurisdiction, and parallel proceedings on the same claim are, in the vast majority of instances, allowed to proceed simultaneously. *Id.* at 16–17. Moreover, even though antisuit injunctions operate only on parties who are within the personal jurisdiction of the Court, in effect, they restrict a foreign tribunal's ability to exercise its jurisdiction and therefore implicate our "salient interest" in international comity. *Id.* at 19; *see also Laker Airways Ltd. v. Sabena, Belgian World Airlines,* 731 F.2d 909, 926–27 (D.C.Cir.1984); *Canadian Filters (Harwich) Limited v. Lear-*

*Siegler, Inc.,* 412 F.2d 577, 578 (1st Cir. 1969). For these reasons, international antisuit injunctions are rarely issued.

## I. *Legal Standard*

■■■ The threshold question when determining the appropriateness of an international antisuit injunction is whether the corresponding actions involve the same parties and issues. If the answer to this question is no, the inquiry ends and the injunction must be denied. *Quaak,* 361 F.3d at 18. If the answer is yes, the Court's next step is to examine the totality of the circumstances and decide whether an injunction should issue. *Id.* at 19. When evaluating the totality of the circumstances, however, the Court does not work from a blank slate. Because considerations of international comity[3] must be afforded "substantial weight," there exists a rebuttable presumption *against* issuing an injunction. *Id.* at 18–19. Overcoming this presumption is an inexact science and the fact-specific nature of the inquiry counsels against the use of inflexible rules. *Id.* at 18; *see also Laker Airways,* 731 F.2d at 927 ("There are no precise rules governing the appropriateness of antisuit injunctions."). Some factors that may tip the scales include—but are by no means limited to—such things as:

- the nature of the two actions (i.e., whether they are merely parallel or whether the foreign action is more properly classified as interdictory);

- the posture of the proceedings in the two countries;

- the conduct of the parties (including their good faith or lack thereof);

- the importance of the policies at stake in the litigation; and

- the extent to which the foreign action has the potential to undermine the forum court's ability to reach a just and speedy result.

*Quaak,* 361 F.3d at 19. In sum, where the lawsuits in question involve the same parties and issues, an injunction will issue only if there are factors supporting issuance that outweigh our salient and substantial interest in international comity.

## II. *The Standard Applied*

■■ The first question this Court must address is whether the Massachusetts and Moscow actions involve the same parties and issues. At first glance, it appears they do not. Even though the two actions arise from a common nucleus of facts and present overlapping issues (i.e., the truth of the plaintiffs' assertion that Victor Vekselberg and his alleged co-conspirators submitted bribes to the Ukranian government), none of the parties in the Massachusetts action are named as parties in the Moscow action, and likewise, none of the parties in the Moscow action are named in the Massachusetts action. Be that as it may, perfect identity of parties is not necessarily required to meet the threshold inquiry, and courts deciding whether to grant an antisuit injunction have looked behind the names captioned in a complaint to identify the true parties in interest. *See, e.g., Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.,* 369 F.3d 645, 652 (2d Cir.2004); *SG Avipro Fin. Ltd. v. Cameroon Airlines,* No. 05 Civ. 655, 2005 WL 1353955 at *2 (S.D.N.Y. June 8, 2005); *Motorola Credit Corp. v. Uzan,* No. 02 Civ. 666, 2003 WL 56998 at

---

**3.** "International comity" has been defined by the Supreme Court as "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Hilton v. Guyot,* 159 U.S. 113, 164, 16 S.Ct. 139, 40 L.Ed. 95 (1895).

*2 (S.D.N.Y. Jan. 7, 2003). Here, Massachusetts Defendant Vekselberg is a controlling shareholder of Moscow Plaintiff Renova, and Moscow Defendant Kolomoisky is the beneficial owner of each of the Massachusetts plaintiffs. The real parties driving the parallel suits, therefore, appear to be sufficiently similar to meet the threshold inquiry. To find otherwise would allow form to trump substance, an approach the Court of Appeals for the First Circuit has specifically eschewed. *See Quaak*, 361 F.3d at 18 (noting that wooden and/or inflexible analysis should be avoided when determining whether to issue an antisuit injunction).

The main issue therefore becomes whether or not the circumstances particular to this case warrant an antisuit injunction. At this time, they do not. As an initial matter, it is clear that the Moscow action as it currently stands threatens neither the jurisdiction of this Court, nor its ability to reach a just and speedy result. The Massachusetts plaintiffs have not argued otherwise, nor can they. Instead, the plaintiffs argue that an injunction is warranted here because the Moscow action purposely threatens *their* ability—financially and otherwise—to see the Massachusetts action all the way through to its conclusion (Renova's Moscow Action seeks damages approximating $110 million). The Moscow action, in plaintiffs' view, is "interdictory." [4]

The Court acknowledges that the specter of facing so large a judgment and the resources needed to combat the Moscow charges are by no means insignificant to the plaintiffs. At present, however, the Moscow action presents no direct threat to this Court's ability to manage the Massachusetts action and bring it to trial. By contrast, the injunction granted in *Quaak* was issued to head off a Belgian court order that threatened to completely shut down pretrial discovery in a United States action. 361 F.3d at 14–16, 20. Likewise in *Laker Airways*, where the court granted an antisuit injunction only after the British Court of Appeals completely enjoined an American plaintiff from pursuing its case against British defendants in a United States court. 731 F.2d at 915. Where, as here, there has been no direct threat to this Court or its ability to administer the action in issue, the presumption favoring international comity remains in tact and an antisuit injunction cannot issue.

It bears mention as well that the Massachusetts action remains in its preliminary stages. *See Quaak*, 361 F.3d at 19 (each case's "posture" is a factor to be considered when examining the totality of the circumstances). Some of the named Massachusetts defendants have yet to be served, and those defendants who have been served, including Vekselberg, have yet to fully present their jurisdictional defenses by way of motions to dismiss. Put simply, it is too early in the game for this Court to take the extraordinary step of issuing an antisuit injunction where, as here, there are important jurisdictional questions that have yet to be resolved.

█ Finally, the Moscow action does not imperil public policies to an extent that would justify an injunction. According to the plaintiffs, the Moscow action threatens three important policy interests: (1) the immunity afforded to allegations made in judicial proceedings; (2) the first amendment free speech rights of the plaintiffs and the public; and (3) the national inter-

---

4. A foreign action is considered "interdictory" if it was instituted for the sole purpose of terminating an action in the United States.

*Gau Shan Co., Ltd. v. Bankers Trust Co.,* 956 F.2d 1349, 1356 (6th Cir.1992) (citing *Laker Airways,* 731 F.2d at 915).

est in RICO plaintiffs' ability to vindicate their rights. (*See* Pls' Mem. in Support (Docket No. 19) at 14–17). Though it is well-settled that an antisuit injunction may issue where a foreign action is initiated simply to evade a forum court's salient public policies, it is equally well-settled that injunctions of this ilk are warranted only when the strongest equitable factors stand in favor. *Kirby v. Norfolk S. Ry. Co.*, 71 F.Supp.2d 1363, 1371 (N.D.Ga.1999) (citing *Laker Airways*, 731 F.2d at 931). The instant actions do not meet this strict standard. First of all, none of the policy interests invoked by the plaintiffs currently stand in jeopardy because this Court's jurisdiction over the Massachusetts action remains in tact. And in any event, assuming *arguendo* that the Moscow action did somehow jeopardize important policy interests, those interests must nevertheless be weighed against the forum's substantial interest in international comity. *See Quaak*, 361 F.3d at 18–19. On the facts as they stand right now, this Court can envision no scenario under which comity would not carry the day.

### CONCLUSION

For the reasons discussed above, plaintiffs' Motion to Enjoin Defendant Victor Vekselberg from Pursuing an Interdictory Foreign Matter must be denied. However, if there are developments in the Moscow action that forestall this Court's ability to administer and/or resolve the Massachusetts action, the Court shall reassess its decision at the plaintiffs' request.

SO ORDERED.