**MAROC FRUIT BOARD S.A. and Wafa Assurance, S.A., Plaintiffs,**

v.

**M/V ALMEDA STAR, Her Engines, Machinery, Tackle, Apparel, Appurtenances, etc., in rem, Star Reefers Shipowning, Inc., in personam, Gard P & I (Bermuda) Ltd., in personam, Assuranceforeningen Gard–Gjensidig, in personam, Defendants.**

Civil Action No. 11–12091–JLT.

United States District Court, D. Massachusetts.

Aug. 19, 2013.

Samuel P. Blatchley, Bradley F. Gandrup, Jr., Pierce Atwood LLP, Boston, MA, for Plaintiffs.

Olaf Aprans, Thomas J. Muzyka, Clinton & Muzyka, P.C., Boston, MA, for Defendants.

Amanda Orcutt Amendola, Ralph T. Lepore, III, Robert M. Shaw, Holland & Knight, Boston, MA, for Interested Party.

**364**

## MEMORANDUM AND ORDER

TAURO, District Judge.

Before the court is an emergency motion by Plaintiffs Maroc Fruit Board S.A. ("Maroc") and Wafa Assurance, S.A. for an international antisuit injunction.

In brief, Plaintiffs commenced this action against Star Reefers Shipowning, Inc. ("Star Reefers") and its vessel, the Almeda Star, in November 2011. Maroc enlisted Star Reefers and the Almeda Star to ship thousands of boxes of fruit from Agadir, Morocco, to New Bedford, Massachusetts. Star Reefers accepted the shipment on November 13, 2011.

When the Almeda Star arrived in New Bedford on November 23, 2011, Plaintiffs learned that a portion of the fruit had been contaminated by an oil leak aboard the vessel. They initiated this suit two days later, claiming damages of approximately $930,000 for oil contamination and $4,000 for short delivery of cargo.

The case proceeded to discovery, which has involved vigorous motion practice. On June 19, 2013, this court allowed Plaintiffs to amend their complaint to add a new claim against additional Defendants Gard P & I (Bermuda) Ltd. and Assuranceforeningen Gard–Gjensidig. Plaintiffs completed service of process on Star Reefers, *in personam*, on July 5, 2013, and Star Reefers filed an answer to the amended complaint on July 26, 2013. This answer for the first time asserted mandatory arbitration in London, England, as an affirmative defense.

According to the affidavit of Brad Gandrup, Jr., submitted in support of Plaintiffs' motion, Star Reefers, acting through its London solicitor Kevin Sach, emailed arbitration demands on July 25, 2013.[1] It sent demands to Bar Imex International, Inc. ("Bar Imex") and Fresh Taste Ltd. ("Fresh Taste"), the intended recipients of the cargo for sale in Canada on a consignment basis.[2] At the August 14, 2013 hearing before this court, Plaintiffs represented that they too received arbitration demands. The demands state that Star Reefers "intend[s] to commence London arbitration ... seeking various relief in connection with the claim they are now facing from MFB ["Maroc Fruit Board"] and WAFA."[3]

Plaintiffs then filed this motion for an international antisuit injunction. They believe, based on prior experiences with Sach in unrelated matters involving different parties, that Star Reefers may ask the English Commercial Court to enjoin this litigation in favor of arbitration. Plaintiffs understand from their past experiences that Sach could apply ex parte for an injunction that could then issue within one or two days. The injunction could prohibit Plaintiffs from taking any action in this lawsuit. Star Reefers responds that it has done nothing before the English Commercial Court regarding this matter, though it acknowledges an intention to ask the U.S. District Court to stay proceedings against Star Reefers in favor of London arbitration.

■ Plaintiffs face a very high bar in seeking an international antisuit injunction: they are "rarely issued."[4] This court, of course, has the authority to enjoin the parties from pursuing litigation in foreign tribunals, but it must temper this authority with a robust appreciation for

1. Gandrup Aff. ¶ 4 [# 68].

2. Routhier Aff. ¶ 5 [# 70]; Sarraino Aff. ¶ 5[# 71].

3. Gandrup Aff. Exs. A, B.

4. *Athina Invs. Ltd. v. Pinchuk,* 443 F.Supp.2d 177, 180 (D.Mass.2006).

considerations of international comity.[5] Accordingly, the Court of Appeals for the First Circuit has established a rebuttable presumption against international antisuit injunctions in favor of the "accepted proposition that parallel proceedings on the same *in personam* claim generally should be allowed to proceed simultaneously."[6]

 The First Circuit has instructed the district courts to examine the totality of the circumstances.[7] As a threshold question, the court must first consider whether the parallel suits involve the same parties and issues.[8] Only if they do may the court move on to examine "all the facts and circumstances."[9] These circumstances include "the nature of the two actions (i.e., whether they are merely par-. allel or whether the foreign action is more properly classified as interdictory); the posture of the proceedings in the two countries; the conduct of the parties (including their good faith or lack thereof); the importance of the policies at stake in the litigation; and, finally, the extent to which the foreign action has the potential to undermine the forum court's ability to

reach a just and speedy result."[10] At all times, the court must give "substantial weight" to considerations of international comity.[11]

 The court concludes that Plaintiffs have made the threshold showing for an injunction. Certainly, both proceedings involve the same issues, namely, Star Reefers' liability to Plaintiffs for the alleged oil contamination of the Almeda Star's cargo. The parties' similarity presents a closer question. Courts usually require only "substantial similarity" between the parties,[12] rather than "perfect identity."[13] The parties must usually share some close relationship.[14] Star Reefers correctly notes that Bar Imex and Fresh Taste are not parties to this litigation, and Maroc has no organizational relationship to them. Nevertheless, Maroc and Star Reefers, the parties at the crux of this dispute, are parties to both proceedings. To allow Star Reefers to avoid an injunction simply by adding an extra party would undermine the flexible approach taken by the First Circuit.[15] Plaintiffs have satisfied the threshold requirement.

5. *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren,* 361 F.3d 11, 16–17 (1st Cir. 2004).

6. *Id.* at 16, 18.

7. *Id.* at 19. In considering a motion for an international antisuit injunction, "district courts have no obligation to employ [the traditional four-part test for preliminary injunctions]." *Id.*

8. *Id.* at 18.

9. *Id.*

10. *Id.* at 19.

11. *Id.* at 18. "Comity" is an "elusive concept" referring to "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are

under the protection of its laws." *Id.* at 18–19 (quoting *Hilton v. Guyot,* 159 U.S. 113, 164, 16 S.Ct. 139, 40 L.Ed. 95 (1895)).

12. *In re Vivendi Universal, S.A. Sec. Litig.,* No. 02 CIV.5571 RJH HBP, 2009 WL 3859066, at *5 (S.D.N.Y. Nov. 19, 2009).

13. *Athina Invs. Ltd. v. Pinchuk,* 443 F.Supp.2d 177, 180 (D.Mass.2006) ("[P]erfect identity of parties is not necessarily required to meet the threshold inquiry...").

14. *See id.* at 180–81 (finding sufficient similarity where parallel proceedings involved corporations and individuals with ownership interests in those corporations); *In re Vivendi Universal,* 2009 WL 3859066, at *5 (determining the "real parties in interest").

15. *Athina Invs. Ltd.,* 443 F.Supp.2d at 181 ("To find otherwise would allow form to trump substance, an approach the Court of

The question then becomes whether Plaintiffs have shown that the balance of equities favors an injunction. The court concludes that they have not. At this time, Star Reefers has only noticed an arbitration. This act alone does not threaten the court's jurisdiction.[16] Plaintiffs worry that Star Reefers will now move quickly for an ex parte injunction ordering them to drop this litigation, an interdictory order that would impede directly this court's jurisdiction.[17] But the court cannot presume that Star Reefers initiated arbitration in bad faith simply because unrelated parties with the same legal representative have acted in bad faith in similar situations.[18] This court has no wish to engage in an "arms race" with the English courts. "If the foreign court reacts with a similar injunction, no party may be able to obtain any remedy."[19] Plaintiffs have not made a strong enough showing at this time that the equitable considerations tip in favor of an injunction.

The court nevertheless recognizes Plaintiffs' concerns. Plaintiffs have invested almost two years in this suit and undertaken extensive and costly discovery, often with stiff resistance from Star Reefers. The court "has a right—indeed, a duty—to preserve its ability to do justice between the parties in cases that are legitimately before it."[20] Star Reefers has indicated its intention to file a motion to stay proceedings pending the London arbitration. The court expresses no opinion on the merits of that issue. But such a motion, or similar motion, brought in open court with an opportunity for opposition, is the appropriate vehicle for addressing a disagreement over the proper forum for resolution of Plaintiffs' claims. The court expects Star Reefers to comport itself, both before this court and in matters affecting this court's jurisdiction over this litigation, in a manner consistent with the values of openness and procedural fairness inherent in the American court system. Failure by any party to do so may result in sanctions.

## ORDER

For the reasons stated, Plaintiffs' *Emergency Motion for Issuance of an International Antisuit Injunction* [# 66] is DENIED WITHOUT PREJUDICE. Plaintiffs may renew their motion if warranted by future developments.

IT IS SO ORDERED.

---

Appeals for the First Circuit has specifically eschewed."); *see In re Vivendi Universal*, 2009 WL 3859066, at *5 (finding substantial similarity where parallel action contained a party not present in original action).

**16.** *See Athina Invs. Ltd.*, 443 F.Supp.2d at 181 (citing cases where court faced direct threat to its jurisdiction).

**17.** "A foreign action is considered 'interdictory' if it was instituted for the sole purpose of terminating an action in the United States." *Id.* at 181 n. 4 (citing *Gau Shan Co., Ltd. v. Bankers Trust Co.*, 956 F.2d 1349, 1356 (6th Cir.1992)).

**18.** *See Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 927 (D.C.Cir. 1984) ("The mere filing of a suit in one forum does not cut off the preexisting right of an independent forum to regulate matters subject to its prescriptive jurisdiction.").

**19.** *Id.*

**20.** *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 20 (1st Cir. 2004).