James N. KIRBY, PTY Ltd. d/b/a Kirby Engineering, and MMI General Insurance, Ltd., Plaintiffs,

v.

NORFOLK SOUTHERN RAILWAY COMPANY, Defendant.

No. Civ.A.1:98–CV–2939TW.

United States District Court, N.D. Georgia, Atlanta Division.

Nov. 8, 1999.

Steven J. Kyle, J.S. Scott Busby, Bovis Kyle & Burch, Atlanta, GA, for James N. Kirby, PTY Ltd., plaintiff.

Richard Kennon Hines, Taylor Tapley Daly, Nelson Mullins Riley & Scarborough, Atlanta, GA, for Norfolk Southern Railway Company, defendant.

Steven J. Kyle, J.S. Scott Busby, Bovis Kyle & Burch, Atlanta, GA, for MMI General Insurance Limited, plaintiff.

## ORDER

THRASH, District Judge.

This is an action in tort, bailment, and for breach of a shipping contract to recover damages for equipment damaged during shipping. It is before the Court on Defendant's Motion to Enjoin Plaintiffs From Pursuing a Parallel Cause of Action in Australia [Doc. 12]. At issue is the standard by which the Court should issue an antisuit injunction against prosecution of a parallel foreign *in personam* action. For the reasons set forth below, the Court will deny the motion.

## I. BACKGROUND

Plaintiff Kirby Engineering is an Australian engineering firm. It is the owner of various equipment which was shipped by sea and land from Australia to Alabama. MMI General Insurance Limited ("MMI"), also a plaintiff and an Australian citizen, is Kirby's insurer for the equipment. Defendant Norfolk Southern is a Virginia corporation which operates a railroad in Georgia and Alabama, among other states. Norfolk Southern entered into a contract with a third-party whereby Norfolk Southern agreed to transport Kirby's equipment from Savannah, Georgia to Alabama. The case arises from the derailment of Norfolk Southern's train in Alabama. The derailment caused nearly $2 million in damages to Kirby's equipment. Kirby contends that Norfolk Southern was negligent or otherwise responsible for its loss under the applicable contracts of carriage. In Australia, Kirby is suing additional parties that contracted to ship the same cargo involved in the present suit. The defendants in the Australian case have cross-claimed against Norfolk Southern. Thus, Norfolk Southern is litigating related issues in separate actions on two continents. Norfolk Southern seeks to enjoin Plaintiffs from pursuing simultaneously the Australian action and the instant case.

Underlying this suit are contracts Kirby entered into in Australia. Kirby contracted with International Cargo Control, Pty Ltd. ("ICC"), a cargo broker, to ship eight containers of equipment to the General Motors Plant in Huntsville, Alabama. ICC then contracted with Hamburg Südamerikanische Dampfschifahrts–Geseilschaft Eggert and Amsinck ("Hamburg Süd"), an ocean carrier, to transport the equipment by ship from Australia to Savannah, Georgia. Hamburg Sud used one of its subsidiaries, Columbus Line, Inc., for the ocean carriage. In Savannah, Columbus Line sub-contracted with Norfolk Southern for rail carriage to Alabama. Thus, there is no direct contractual relationship between Kirby and Norfolk Southern.

On October 9, 1997, the train carrying Kirby's equipment derailed in Alabama before reaching its destination. Kirby suffered more than $2 million in damage to its equipment. Seeking damages for its loss, Kirby first sued ICC in Australia. ICC cross-claimed against Hamburg Süd, and Kirby amended its claim to include Hambürg Sud. Kirby also filed suit in this Court against Norfolk Southern. Hambürg Sud then brought a cross-claim against Norfolk Southern in the Australian action. Norfolk Southern contests jurisdiction in the Australian action. Norfolk Southern has moved to stay that action due to the pendency of this case. The Australian court recently denied the motion to stay.

Relevant to the matter of jurisdiction are several forum selection clauses contained within the parties' agreements. ICC's bill of lading with Kirby provides:

> Actions against the freight forwarder [ICC] may be instituted only in the place where the freight forwarder has his place of business as stated on the reverse of the FBL [indicated as Bank-

smeadow, New South Wales, Australia] and shall be decided according to the law of the country in which that place of business is situated.

[Doc. 13, Exh. D, Clause 19]. Hamburg Süd, through its Columbus Line subsidiary, also entered into a contract with a forum selection clause. The Columbus Line bill of lading for ICC provides:

Any suit to recover on any claim for loss or damage to the Goods ... shall be brought only in the country where the Goods are received for transportation [here, Australia] or where the Contract calls for delivery [here, the United States], the country to be chosen by the party making the claim [here, ICC].

[Doc. 13, Exhibit E, Clause 22].

Norfolk Southern contends that the Court should enjoin Kirby from proceeding with its Australian action. Norfolk Southern argues that a district court has discretion to enjoin parties before it from pursuing a parallel foreign *in personam* action if that action would cause unfair hardship and delay the speedy and efficient determination of the cause. [Doc. 12, p. 4]. Norfolk Southern characterizes the Australian and instant suits as parallel actions involving common parties, claims and issues. [Doc. 12, p. 3]. Norfolk Southern contends that its interests will be impaired if it is forced to litigate in Australia. The purported impairment results from the fact that all of Norfolk Southern's liability witnesses are located in the United States. Additionally, Norfolk Southern contends that Australian procedural rules restrict live witness testimony, further hampering its defense. [Doc. 12, p, 7]. Thus, Norfolk Southern contends that allowing the Australian action to proceed hinders its ability to obtain a fair trial, thereby contravening an important public policy in this country. Also, Norfolk Southern contends that the burden of persuasion should fall on the party opposing the motion to enjoin. Under this view, to avoid an injunction Kirby would have to demonstrate that enjoining the Australian action would impair relations between that country and the United States. [Doc. 12, p. 4].

In response, Kirby contends that the Australian suit is not a parallel action with the instant case because the Australian suit involves parties and claims not before this Court. Kirby contends that separate suits are required because of forum selection clauses in its contract with ICC and in the contract between ICC and Columbus Line. Kirby also argues that an antisuit injunction by this Court would deprive Kirby of, or at least forestall, its claims against ICC and Hamburg Süd. The injunction could also result in a stalemate of both suits if the Australian court took similar action. Kirby argues that international comity compels the Court to allow both suits to proceed. Finally, Kirby maintains that even under the liberal approach some circuits employ in granting antisuit injunctions, the forum selection clauses here warrant a denial of the injunction. As to the burden of persuasion, Kirby contends the movant must demonstrate that the foreign proceeding would be so manifestly inconvenient that the movant will be effectively deprived of a fair resolution. [Doc. 13, p. 6].

## II. DISCUSSION

 It is undisputed that federal courts possess the discretionary power to enjoin parties subject to their jurisdiction from pursuing parallel *in personam* litigation before foreign tribunals. *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 627 (5th Cir.1996); *Gau Shan Co. v. Bankers Trust Co.*, 956 F.2d 1349 (6th Cir.1992); *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 926 (D.C.Cir.1984). Nevertheless, parallel *in personam* proceedings should ordinarily be allowed to proceed simultaneously, at least until judgment is reached in one which can be pled as *res judicata* in the other. *Laker Airways*, 731 F.2d at 926–27. When to invoke the power to enjoin a foreign proceeding is the rub. That the injunction operates only against the parties, and not directly on the foreign court, does not obviate the need for due regard to principles of international comity, as such an order effectively in-

vades the jurisdiction of a sovereign government. *China Trade and Development v. M.V. Choong Yong,* 837 F.2d 33, 35 (2d. Cir.1987).

■ The Eleventh Circuit has not yet addressed this issue. Other Circuits have adopted one of two approaches.[1] Some circuits follow a so-called restrictive approach in granting antisuit injunctions. The restrictive approach places a premium on preserving international comity. Under this approach, courts should enjoin parties from prosecuting parallel foreign *in personam* actions only for one of two reasons: when necessary to protect the forum court's jurisdiction over the matter at issue, or to protect important public policies. *See, e.g., Laker Airways v. Sabena,* 731 F.2d 909 (D.C.Cir.1984); *China Trade & Dev. Corp.,* 837 F.2d at 36 (2d Cir.1987); *Gau Shan Co. v. Bankers Trust,* 956 F.2d 1349 (6th Cir.1992). Other circuits issue antisuit injunctions more freely. For convenience, the Court will refer to this view as the liberal approach. The liberal approach places less importance on international comity in deciding international jurisdictional disputes. Instead, the liberal approach focuses on whether duplicative litigation is "vexatious." In these circuits, a duplication of the parties and issues, alone, generally suffices to justify issuing an antisuit injunction. *See, e.g., Seattle Totems Hockey Club, Inc. v. National Hockey League,* 652 F.2d 852, 856 (9th Cir.1981), *cert. denied,* 457 U.S. 1105, 102 S.Ct. 2902, 73 L.Ed.2d 1313 (1982); *In re Unterweser Reederei, Gmbh,* 428 F.2d 888, 896 (5th Cir.1970), *rev'd on other grounds sub. nom., M/S Bremen v. Zapata Off–Shore Company,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

■ Each of the two approaches considers the effect an antisuit injunction will have on comity. Accordingly, it is important to define this somewhat elusive con-

cept. The Supreme Court has defined comity as "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Hilton v. Guyot,* 159 U.S. 113, 164, 16 S.Ct. 139, 40 L.Ed. 95 (1895). Although comity is not required by international law, "comity attempts to ensure the development of a working international dispute resolution system by advocating respect or deference for a foreign jurisdiction's laws."[2] The difficulty in applying such an amorphous concept arises from the fact that, legally, comity is neither an absolute obligation nor a matter of mere courtesy and good will. *Laker Airways,* 731 F.2d at 956 (Starr, J. dissenting). Put another way, comity is a continual give-and-take of jurisdictional respect.

Of the two approaches to antisuit injunctions, the liberal approach sets a lower bar for enjoining parties from prosecuting foreign parallel *in personam* actions. The Fifth, Seventh and Ninth Circuits have adopted or incline toward this approach. *See, e.g., Kaepa v. Achilles,* 76 F.3d 624 (5th Cir.1996); *Philips Medical Sys. Int'l B.V. v. Bruetman,* 8 F.3d 600, 605 (7th Cir.1993); *Seattle Totems Hockey Club, Inc. v. National Hockey League,* 652 F.2d 852 (9th Cir.1981). Generally, courts in these circuits grant antisuit injunctions if a duplication of parties and issues exists between a suit in the forum court and a foreign suit. While not excluding considerations of international comity, this standard focuses on the "potentially vexatious nature" of concurrent foreign litigation. *Kaepa,* 76 F.3d at 627.

Among the circuits following this approach, *Seattle Totems* is a leading case. There, the Ninth Circuit affirmed an anti-

---

**1.** *See generally* Steven R. Swanson, *The Vexatiousness of a Vexation Rule: International Comity and Antisuit Injunctions,* 30 Geo. Wash.J. Int'l L. & Econ. 1 (1996).

**2.** Swanson, *supra,* at 4.

suit injunction granted against the defendant, the National Hockey League (NHL), in an antitrust action. *Seattle Totems*, 652 F.2d at 856. The NHL had sought to file a suit involving the same breach of contract claim in Canadian courts as the case in district court. The NHL admitted that under Fed.R.Civ.P. 13(a) their contract claim would constitute a compulsory counterclaim in the U.S. antitrust suit. Canadian law, however, did not require the defendant to assert a compulsory counterclaim. The Ninth Circuit affirmed the district court's injunction and invocation of Rule 13(a) to govern the pending litigation rather than Canadian law. *Id.* at 853–54. In reaching its holding, the Ninth Circuit adopted factors set forth by the Fifth Circuit in *Bremen, supra.* The court stated that "foreign litigation may be enjoined when it would (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing courts [sic] *in rem* or *quasi in rem* jurisdiction, or (4) where the proceedings prejudice other equitable considerations." *Id.* at 855. In reaching its decision, the Ninth Circuit considered factors from *forum non conveniens* doctrine such as convenience to the parties and witnesses, the efficient administration of justice, and the potential prejudice to one party. *Id.* at 856.

The *Seattle Totems* court relied, in part, on *Bremen*, 428 F.2d 888 (5th Cir.1970). *Bremen* involved a contract to tow a drilling barge from Louisiana to Italy. The contract contained a forum selection clause requiring the litigation in London of any disputes. After the barge was damaged *en route* in the Gulf of Mexico, the tug boat sought refuge in Tampa Bay. The barge owner, a Delaware corporation, sued in the Middle District of Florida. The defendant tug owner, a German corporation, moved to stay the district court action, and filed suit in London for breach of the towage contract. On the barge owner's motion, the district court enjoined the tug owner from proceeding in London. *Bremen*, 428 F.2d at 889–90. The Fifth Circuit affirmed, viewing the English ac-

tion as a counterclaim from the pending district court action. The court stated that, "allowing simultaneous prosecution of the same action in a foreign forum thousands of miles away would result in 'inequitable hardship' and 'tend to frustrate and delay the speedy and efficient determination of the cause.'" *Id.* at 896 (footnote omitted). Thus, the Fifth Circuit also analyzed the issue through the lens of *forum non conveniens* doctrine. Outlining the circumstances which would permit a court to enjoin a party from prosecuting a foreign action, the Fifth Circuit listed the four factors later adopted by the Ninth Circuit. For its authority, the Fifth Circuit relied in part on the 1953 edition of Moore's *Federal Practice. Id.* at 890, f.n. 7. The Supreme Court vacated the Fifth Circuit's decision. The Court noted that the district court had given the forum selection clause "little, if any, weight." *Bremen*, 407 U.S. at 6, 92 S.Ct. 1907. The Court held that forum selection clauses between parties of equal bargaining power are *prima facie* valid. The Court placed the burden on the party resisting the clause to show that enforcement would be unreasonable under the circumstances. *Id.* at 10, 92 S.Ct. 1907.

The restrictive approach places a premium on international comity. Adopted by the D.C., the Second and the Sixth Circuits, the restrictive approach permits such injunctions against parallel *in personam* foreign actions only for two reasons. *See, e.g., Laker Airways Ltd.*, 731 F.2d 909 (D.C.Cir.1984); *China Trade & Dev. Corp.*, 837 F.2d 33, 36 (2d Cir.1987); *Gau Shan Co.*, 956 F.2d 1349 (6th Cir.1992). These circuits require the party seeking the injunction to show that prosecution of the foreign suit presents a threat to the forum court's jurisdiction or imperils important public policies of the forum court. *Gau Shan*, 956 F.2d at 1353.

The leading case adopting the restrictive approach is *Laker Airways*. In that case, the district court enjoined American and other non-British defendants from seeking

relief in English courts as an attempt to evade United States antitrust laws. Upholding the injunction, the D.C. Circuit found that the antitrust laws clearly applied to the conduct underlying the claims. The court found that "a preliminary injunction [was] *imperative* to preserve the court's jurisdiction." *Laker Airways,* 731 F.2d at 956 (emphasis added). Thus, although the D.C. Circuit affirmed the lower court, it adopted a higher standard than the Fifth, Seventh and Ninth Circuits for issuing foreign antisuit injunctions. Because the foreign action directly infringed on the jurisdiction of the United States courts, the injunction was appropriate.

Adopting the reasoning from *Laker Airways,* the Second Circuit reversed an antisuit injunction in *China Trade.* 837 F.2d at 35. This admiralty action involved a contract between China Trade, an importer, and a Korean shipper for the shipping of soybeans from the U.S. to China. The Korean vessel ran aground and ruined China Trade's soybean cargo. *Id.* at 34. China Trade sued in U.S. district court for its losses, and the parties began discovery. Before trial, the Korean shipper filed suit in South Korea seeking the equivalent of a declaratory injunction to avoid liability. China Trade moved in district court for an injunction against the Korean action. Finding identical parties and issues in both actions, and considering factors of vexatiousness and expense, the district court permanently enjoined the shipper from prosecution of the Korean action. *Id.* The Second Circuit reversed. Addressing jurisdictional concerns, the court found that the Korean court had attempted neither to enjoin nor usurp the district court's jurisdiction over the matter. *Id.* at 36–37. Regarding policy concerns, the court found no evidence that the Korean shipper sought to evade any important public policy of the United States courts. The court held that an injunction is not appropriate merely to prevent a party from seeking slight advantages in substantive or proce-

dural law in a foreign court. Moreover, the possibility that a U.S. judgment might be unenforceable in the Korean court was only speculation. Thus, the Second Circuit held that enjoining the foreign suit was unjustified. *Id.* at 37.

As these cases show, courts adopting the restrictive approach issue antisuit injunctions sparingly. As with the liberal approach, courts in restrictive circuits generally make a threshold finding that the foreign action involves identical parties and issues. Whereas other circuits require little more than identical parties and issues, the courts following the restrictive approach recognize only two grounds warranting a foreign antisuit injunction even with identical parties and issues: (1) to protect the forum's jurisdiction over the matter at issue, or (2) to prevent evasion of the forum's important public polices. In these circuits, a duplication of the parties and issues, alone, is not sufficient to enjoin a foreign suit. *China Trade,* 837 F.2d at 36; *Laker Airways,* 731 F.2d at 928.

Before adopting either approach, it is important to understand the precedential constraints on the Court's decision. The Fifth Circuit decision in *Bremen* along with *Bethell v. Peace,* 441 F.2d 495 (5th Cir.1971), are the only potentially binding precedents on this issue.[3] The facts of both cases limit their applicability to the case at bar. *Bremen* turned on a forum selection clause and the weight the clause warranted. Here, there is no contractual forum selection clause agreed to by Kirby and Norfolk Southern because no direct contract exists between the two parties. Although Kirby spends much of its brief describing the forum selection clause ICC entered with Columbus Line, that contract has no bearing on the jurisdiction of the dispute between Kirby and Norfolk Southern. Thus, *Bremen* is not on point, although the concerns expressed by the Court resonate with the present dispute.

**3.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding prece-

dent all decisions the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

Between the issuance of the Fifth Circuit and the Supreme Court's opinions in *Bremen*, the Fifth Circuit faced a similar issue in *Bethell v. Peace*. That case involved a Florida real estate broker who persuaded six of seven co-owners of Bahamian real estate to sign a contract selling the land to her. The broker then filed actions in the Bahamas to have the contract specifically enforced. Subsequently, Mr. Bethell sued in the Southern District of Florida to declare the contract invalid. The district court declared the contract invalid, granted summary judgment for the plaintiff, and enjoined the defendant broker from relying on the contract. *Bethell*, 441 F.2d at 495–496. The Fifth Circuit affirmed because the district court found the agreement invalid on its face—a substantive ruling. It was, therefore, within the lower court's discretion to relieve the plaintiff "of expense and vexation of having to litigate in a foreign court." *Id.* at 498. Because the jurisdictional issue in *Bethell* turned on the substantive outcome, the case offers little precedential value. Thus, no binding precedent exists to inform the Court's decision.

Having duly considered the arguments and authority raised by both sides, the Court adopts the restrictive approach. The alternative too freely allows courts to invade the jurisdiction of sovereign governments. Moreover, the underlying justification for the liberal approach reflects an antiquated view of commerce. As noted above, the factors adopted by the Fifth and Ninth Circuits can be traced at least to the middle of this century. *See Bremen*, 428 F.2d at 890, fn. 7 (*citing* 1953 edition of Moore's *Federal Practice*). Today's world is one of economic interdependence. *Gau Shan*, 956 F.2d at 1354. "[E]conomic interdependence requires cooperation and comity between nations." *Id.* When American companies accept business from foreign firms, they also accept the possibility of concurrent jurisdiction with foreign courts over disputes arising from that relationship. *Id.* We cannot capitalize on world markets "exclusively on our terms, governed by our laws, and resolved in our courts." *Bremen*, 407 U.S. at 9, 92 S.Ct. 1907. Following the reasoning of *Bremen*, parties can agree in advance on where their disputes should be resolved. Where, as here, the parties have not selected a forum, concurrent jurisdiction should be expected. Comity dictates deference and mutual respect for concurrent foreign jurisdiction. Thus, a duplication of parties and interests, alone, should not justify the issuance of a foreign antisuit injunction. *Id.* at 1355.

█ Courts generally should allow parallel proceedings on the same *in personam* claim to proceed simultaneously until a judgment is reached in one jurisdiction. *Gau Shan*, 956 F.2d at 1352. Such a judgment can then be pled as *res judicata* in the other jurisdiction. *Id.* Consequently, courts should rarely enjoin litigants from proceeding in courts of foreign countries. *Laker Airways*, 731 F.2d at 927. As a prerequisite to obtaining a foreign antisuit injunction, a threshold finding of identical parties and issues must be made. Such a threshold showing is not present here. The Australian action involves parties not before this court and, apparently, not subject to this court's jurisdiction. These circumstances are quite different from cases such as *Seattle Totems* and *Kaepa* where a defendant in United States district court runs to a foreign tribunal to file "mirror-image claims." *Kaepa*, 76 F.3d at 626. Because the parties and issues before the Australian court do not mirror the instant action, that case is not properly labeled a "parallel" action. The same result obtains if the actions are viewed as parallel. Neither of the two grounds which warrant an injunction are present. The Australian proceedings neither threaten this Court's jurisdiction nor impede or evade important public policies of this Court.

█ Courts have a duty to protect their legitimately conferred jurisdiction in order to provide justice to the parties subject to that jurisdiction. *Laker Airways*, 731 F.2d at 927. Consequently, when a

litigant's action in a foreign tribunal threatens to undermine the jurisdiction of the court, the court may consider the effectiveness and propriety of enjoining the litigant's participation in the foreign proceeding. *Id.* Such threats, however, are rare. Two circumstances present this threat. First, concurrent proceedings pose an inherent threat to *in rem* or *quasi in rem* jurisdiction. *See China Trade,* 837 F.2d at 36. Where jurisdiction arises solely from the presence of property within the forum, that jurisdiction is threatened if a foreign court orders the transference of the property to another location. *Id.* No such concern is present in the instant case. Secondly, with *in personam* cases, "if a foreign court is not merely proceeding in parallel but is attempting to carve out exclusive jurisdiction over the action, an injunction may also be necessary to protect the enjoining court's jurisdiction." *Gau Shan,* 956 F.2d at 1356. As in *Laker Airways,* where the foreign parallel action was interdictory and not parallel, an antisuit injunction is proper. A foreign parallel action is interdictory when it was instituted in the foreign court solely to terminate the United States claim. *Laker Airways,* 731 F.2d at 915. Such a direct interference with the jurisdiction of a United States court warrants the "defensive issuance of an antisuit injunction." *Gau Shan,* 956 F.2d at 1356.

■ Here, as in *Gau Shan,* many factors favor litigation of this case in the United States. Most of the witnesses reside here. Nothing in the record, however, indicates that this Court's jurisdiction is threatened. There is no evidence that the Australian court would enter an antisuit injunction. The fact that Norfolk Southern's ability to present live witnesses will be restricted in Australia does not pose a threat to the jurisdiction of this court; it is only a threat to Norfolk Southern's interest in defending itself from this lawsuit. *Gau Shan,* 956 F.2d at 1356. An injunction, however, is not appropriate "merely to prevent a party from seeking 'slight advantages in the substantive or procedural law to be applied in a foreign court.'" *Id.* Thus, no jurisdictional concerns justify enjoining the foreign proceeding.

■ An antisuit injunction may also be appropriate when a party seeks to evade some important public policy of the forum court through litigation in a foreign proceeding. *Id.* at 1357. Antisuit injunctions based on an attempted evasion of the forum's public policies are warranted "only when the strongest equitable factors favor its use." *Laker Airways,* 731 F.2d at 931. Here, equity does not warrant an injunction. There is no evidence from which to infer that Kirby filed its suit in Australia in an attempt to evade the public policies of this forum. The record establishes that Kirby was bound by forum selection clauses in the applicable contracts to litigate against ICC and Hamburg Süd in Australia. Indeed, in a recent judgment issued by the Supreme Court of New South Wales, Australia, the court recognized that Kirby can only seek relief against ICC and Hamburg Süd in that forum. [Doc. 15, Exh. A, ¶ 34]. Additionally, no procedural injustice will result from concurrent jurisdiction. Norfolk Southern argues that its defenses to the claims in Australia will require numerous witnesses, physical evidence, charts, computer models and photographs. [Doc. 12, p. 7]. Norfolk Southern alleges that its ability to present its defense will be hamstrung with the "perfunctory manner" by which it contends the Australian court operates. [Doc. 12, p. 7]. While these procedural hindrances raise valid concerns, Norfolk Southern's opposing parties will face the same obstacles. Moreover, allowing Kirby to further litigate in Australia will not pose an unreasonable expense on Norfolk Southern. As Norfolk Southern recognizes, Australian procedural rules permit very little live testimony. Thus, while the vast majority of witnesses necessary for Norfolk Southern's defense may reside in the United States, their depositions—already necessary for this case—can be used in the Australian proceedings. Any other proce-

dural disadvantages Norfolk Southern might face are neither unreasonable nor unexpected in light of its decision to transport international cargo without bargaining for a United States forum. The right to a fair trial is an important public policy in this Court. Norfolk Southern has not shown that it will forfeit that right absent an antisuit injunction.

■ Norfolk Southern also argues that an injunction should issue because simultaneous litigation of the Australian action is duplicative. Norfolk Southern also contends that because virtually all of their witnesses are in the United States the trial should only occur here. While these arguments may support the transfer of a case on grounds of *forum non conveniens*, they do not warrant the issuance of an antisuit injunction. "Considerations that are appropriate in deciding whether to decline jurisdiction are not as persuasive when deciding whether to deprive another court of jurisdiction." *Kaepa*, 76 F.3d at 631 (dissent). Indeed, if the Court were to hold that duplication of parties and convenience to litigants were a sufficient basis to issue a foreign antisuit injunction, parallel proceedings would never be permitted.

Moreover, resolution of this case will not resolve the Australian action in whole. The core of that case—Kirby's suit against ICC and Hamburg Süd—still must be tried. Enjoining Kirby from simultaneously prosecuting the Australian action would unnecessarily delay those proceedings. Respect for international comity, and due regard for the sovereignty of the Australian judicial system, dissuades this Court from unnecessarily enjoining an action in the Australian courts. Insisting on a parochial concept that all disputes should be resolved in our courts will neither encourage the expansion of American commerce nor endear us to our neighbors. Accordingly, the motion should be denied.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Enjoin Plaintiffs From Pursuing a Parallel Cause of Action in Australia [Doc. 12] is hereby DENIED.

SO ORDERED.