**CANON LATIN AMERICA, INC., Plaintiff,**

v.

**LANTECH (CR), S.A., Defendant.**

**No. 05–20297 CIV COOKE, 05–20297 CIV BROWN.**

United States District Court, S.D. Florida.

Sept. 27, 2006.

---

12. Plaintiff has never argued that these agreements were the result of fraud or over-reaching.

Michael Diaz, Jr., Scott A. Burr, and Robert T. Rigal, of Diaz, Reus, Rolff, & Targ, LLP, Miami, Counsel for Plaintiff Canon Latin America, Inc.

Traci H. Rollins and David J. D'Agata, Squire, Sanders & Dempsey, LLP, West Palm Beach, Counsel for Defendant Lantech.

### ORDER GRANTING SECOND RE-NEWED MOTION FOR PRE-LIMINARY INJUNCTION

BROWN, United States Magistrate Judge.

This matter is before the Court on Plaintiff's Second Renewed Motion for

Preliminary Injunction, filed July 6, 2006.[1] The Court has reviewed the Motion, the Response and the Reply. In addition, an evidentiary hearing was held on August 8, 2006, and the Court adopts the transcript of that hearing by reference herein.

### FACTS

In 1996, Canon Latin America ("Canonlat"), a Florida corporation headquartered in Miami, Florida, entered into a distributorship agreement with Lantech (CR), S.A. ("Lantech"), a Costa Rican corporation. In 2003, the parties entered into a superseding distribution agreement ("the Agreement"). Both the original and superseding agreements were negotiated at arms-length, and entered into voluntarily Paragraph Nineteen (19) of the Agreement, the "Choice of Law and Forum" clause, states, *inter alia,* as follows:

> 1.1 CANONLAT hereby appoints Distributor as a *non-exclusive* authorized distributor of the CANON® brand products listed in the Sales and Service Terms Schedule attached hereto as Schedule A, ... (emphasis added).

> \*    \*    \*    \*    \*    \*

> 2.4 Distributor acknowledges that its appointment hereunder as an authorized Canon distributor of the Products within the Territory is *non-exclusive,* and that CANONLAT reserves the right, without notice to Distributor, to make direct sales of any Products to End Users within the Territory and to appoint other distributors ... (emphasis added).

> \*    \*    \*    \*    \*    \*

19. CHOICE OF LAW AND FORUM

THIS AGREEMENT IS MADE WITHIN THE STATE OF FLORIDA AND SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF FLORIDA. IF A DISPUTE ARISES AS A RESULT OF THE TERMINATION OF THIS AGREEMENT PURSUANT TO PARAGRAPHS 11 OR 15.3 ABOVE, AND IF SUCH DISPUTE CANNOT BE SETTLED THROUGH NEGOTIATION, THE PARTIES AGREE FIRST TO ATTEMPT IN GOOD FAITH TO RESOLVE THE DISPUTE BY MEDIATION IN MIAMI, FLORIDA, ... **IN THE EVENT OF ANY LITIGATION BETWEEN THE PARTIES, DISTRIBUTOR CONSENTS TO THE JURISDICTION AND VENUE OF THE STATE AND FEDERAL COURTS SITUATED WITHIN THE STATE OF FLORIDA UPON SERVICE OF PROCESS MADE IN ACCORDANCE WITH THE STATUTES OF FLORIDA AND THE UNITED STATES, RESPECTIVELY. DISTRIBUTOR FURTHER AGREES THAT ALL SUITS COMMENCED BY DISTRIBUTOR AGAINST CANONLAT UPON ANY AND ALL CAUSES OF ACTION, WHETHER OR NOT SUCH CAUSES OF ACTION HAVE ARISEN UNDER THIS AGREEMENT AND REGARDLESS OF THE LEGAL THEORY UPON WHICH SUCH CAUSES OF ACTION ARE BASED, SHALL BE BROUGHT EXCLUSIVELY IN A STATE OR FEDERAL COURT SITUATED WITHIN THE STATE OF FLORIDA.** \* \* \*

Agmt. ¶ 19. (emphasis added)

Carlos J. Crosa, Canonlat's General Sales Manager, testified that in March,

---

**1.** On May 23, 2006, this Court denied the emergency nature of the original motion for injunctive relief stating "the basis for same is over one year old," but reserved ruling on the request for injunctive relief. On June 5 and July 6, 2006, Canonlat filed its renewed and second renewed motion for preliminary injunction, respectively.

2004, Lantech was not current with its account, and Canonlat communicated with Lantech many times, trying to collect with no success. Canonlat hired a new distributor, Santa Barbara Technology, S.A. ("SB Technology"), and notified Lantech.

On November 11, 2004, Lantech filed an action against Canonlat in Costa Rica seeking indemnity from Canonlat as well as SB Technology, claiming damages in the amount of $6,303,366.89, under Costa Rica Law No. 6209, entitled Representatives of Foreign Companies Act.[2] Mr. Crosa testified that by this action, Lantech terminated the Agreement, which was never previously terminated by Canonlat. Canonlat did not learn of the suit until it was advised of same in January, 2005 by S.B. Technology. Even after the lawsuit was filed, Canonlat continued to receive communications from Lantech regarding meeting to try to resolve the collection dispute. Mr. Crosa testified that Canonlat did not terminate its relationship with Lantech until it was unable id collect the payment.

On December 14, 2004, without prior notice to Canonlat, the Costa Rican court required Canonlat to post a one-million-dollar bond ($1,000,000.00) or discontinue importing goods to Costa Rica. After being informed of the lawsuit in January, 2005, Canonlat posted the bond, retained an at-

torney in Costa Rica and unsuccessfully tried to have the case moved to the United States, moved to dismiss the Costa Rica action for lack of jurisdiction. Mr. Crosa testified that the Costa Rica lawsuit has cost Canonlat "a significant amount of money" and has caused damage to its brand in Costa Rica.

On February 1, 2005, Canonlat filed in this Court, pursuant to the Agreement, an initial complaint for declaratory and injunctive relief. On May 11, 2005, Canonlat filed a six (6) count Amended Complaint seeking/alleging: a declaratory judgment as to the choice of law and forum provision of the Agreement (Count I); an injunction enjoining the parties from litigating in Costa Rica (Count II); breach of contract, alleging that Lantech failed to pay Canonlat for its products in Florida (Count III); open account (Count IV); "account stated," seeking back costs (Count V) and unjust enrichment, seeking damages (Count VI).[3]

At the hearing before this Court, Costa Rican attorney Claudio Muriello testified that Canonlat's act of appointing another distributor after twenty nine years of an exclusive commercial relationship might be considered a breach of contract pursuant to Law No. 6209, and that a written contract is not necessary to institute a proceeding under that section. He further

---

**2.** The pertinent portion of that law states as follows:

**Article 2. (Recission of the agreement for reasons alien to the representative, distributor or manufacturer. Consequences).** If the representation, or distribution or manufacturing agreement is rescinded for reasons beyond the control of the representative, distributor or manufacturer, or when the term of the agreement expires and it is not extended for reasons beyond the control of the same, the foreign company shall indemnify them with an amount calculated on the basis of the equivalent of four months of gross profits for each year or

fraction of time passed. The value of the indemnity in no event shall be calculated for a period exceeding nine years of service. * * *

**3.** On May 27, 2005, District Judge Cooke issued an Order dismissing Lantech's original complaint for lack of personal jurisdiction, which was later vacated on October 20, 2005. On June 28, 2006, this Court denied Lantech's renewed motion to dismiss the amended complaint and compel medication, finding that the Court has personal jurisdiction over Lantech.

explained that pursuant to the Costa Rican Civil Code and Costa Rican jurisprudence there exists a "reality" contract, which is not what the parties wrote, nor what the parties intended to do, but rather, how, in reality, it was performed by the parties. In interpreting the contract, a judge does not address only the written contract, but should also investigate the circumstances surrounding how, when and where the contractual obligations were applied. In other words, a written contract is considered important evidence, but not the sole piece of evidence.

Canonlat proffered the testimony of Costa Rican Attorney Abaro Caraza, who would have testified that (1) under Art. 1022 of the Costa Rica Civil Code, Cost Rica recognizes and enforces contracts between parties; (2) under Law No. 6209, it is necessary for there to be the existence of a contractual relationship between the parties before the court can award indemnification damages; (3) there is no law or case law in Costa Rica that converts a sole distributorship into an exclusive one; (4) the Costa Rica complaint is an ordinary process similar to a declaratory judgment in the United States; and (5) the Costa Rica complaint is not exclusively a complaint containing a statutory claim.

### DISCUSSION

Canonlat requests that this Court issue an order enjoining Lantech "from taking any action in furtherance of the Costa Rica proceeding until the time this Court determines whether the Agreement's choice of law and forum selection provisions are valid and enforceable. . . ." Mot. p. 16.

■ This Court has the discretionary power to enjoin parties subject to its jurisdiction from pursuing parallel in personam litigation before foreign tribunals. *See, e.g., Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 627 (5th Cir.1996). The Circuits have taken two different approaches as to when antisuit injunctions should be granted.[4] Although all courts consider the issue of comity to some extent, the Fifth, Seventh and Ninth Circuits have ordered antisuit injunctions more liberally, *see Kaepa, supra; Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425 (7th Cir.1993); *E. & J. Gallo Winery v. Andina Licores, S.A.*, 446 F.3d 984(9th Cir.2006), while the Second, Third, Sixth and D.C. Circuits have adopted a more restrictive approach. *See Paramedics Electromedicina Comercial Ltda. v. GE Medical Systems Information Technologies, Inc.*, 369 F.3d 645 (2d Cir. 2004); *Compagnie des Bauxites de Guinea v. Ins. Co. of North Am.*, 651 F.2d 877 (3d Cir.1981), *aff'd*, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); *Gau Shan Co., Ltd. v. Bankers Trust Co.*, 956 F.2d 1349 (6th Cir.1992), *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909 (D.C.Cir.1984).

■ The Eleventh Circuit has not spoken directly on the issue, but has affirmed, without opinion, a decision by the Middle District of Alabama declining to enter an anti-suit injunction based on the restrictive approach. *See Mutual Service Casualty Co. v. Frit Industries, Inc.*, 805 F.Supp. 919 (M.D.Ala.1992), *aff'd*, 3 F.3d 442 (1993). This decision is not binding on this Court, however, in that when a judgment is affirmed by an appellate court without an opinion, the affirmance "has no precedential effect and can not be read as necessarily approving of the district court's reasoning." *Diesel Machinery, Inc. v. B.R. Lee Industries, Inc.*, 418 F.3d 820, 830 (8th Cir.2005) (citing *Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173,

---

**4.** The traditional four prong preliminary injunction inquiry is not applicable. *See, E. &* *J. Gallo Winery v. Andina Licores, S.A.*, 446 F.3d 984, 990–91 (9th Cir.2006).

182–83, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979)); *Fusari v. Steinberg,* 419 U.S. 379, 391, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975)(Burger, C.J., concurring) ("When we summarily affirm, without opinion ... we affirm the judgment but not necessarily the reasoning by which it was reached.").

In *Mutual Service,* the Middle District of Alabama, not believing itself bound by then existing Fifth Circuit precedent[5], adopted the "restrictive approach" of the District of Colombia in *Laker Airways, supra,* finding that "injunctions of foreign proceedings are appropriate when necessary to prevent a 'miscarriage of justice,'" which "will most often exist, first, when the foreign courts' action threatens the jurisdiction of the enjoining court or, second, when a party attempts to evade or frustrate a forum's important public policies by litigating in a foreign court." *Id.* at 923–24 (citing *Gau Shan Co.,* 956 F.2d at 1354–55, *China Trade & Dev. Corp. v. M.V. Choong Yong,* 837 F.2d 33 (1987); *Laker Airways,* 731 F.2d at 927). Rejecting a more liberal test, the *Mutual Service* court found that "the power to enjoin foreign proceedings raises significant and substantial issues of international comity and sovereignty" and that "it is a well established part of this country's jurisprudence that, when two sovereigns have concurrent in personam jurisdiction, one court will ordinarily not interfere with or try to restrain proceedings before the other." *Id.* at 922, 923.

At the time *Mutual Service* was decided there were two Fifth Circuit cases which had addressed the issue. In the first, *In re Unterweser Reederei Gmbh,* 428 F.2d 888 (5th Cir.1970), *aff'd on rehearing en banc,* 446 F.2d 907 (1971), *rev'd on other grounds sub nom., M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), an admiralty case, the Court noted that antisuit injunctions have been granted by courts in equity when foreign litigation involving the same parties and issues would (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's in rem or quasi in rem jurisdiction; or (4) prejudice other equitable considerations. *Id.* at 890. The Fifth Circuit affirmed the district court's injunction preventing the owner of a tug from proceeding further with litigation concerning the same matter in an English court, giving no effect to a choice of forum clause selecting England to resolve disputes in the parties' agreement. The Court found that the district court had the discretion to decline jurisdiction on the basis of forum non conveniens, "[b]ut apart from the forum selection clause itself the circumstances supported a retention and determination by the district court." *Id.* at 894. The Court also noted that the "substantive rights" of the plaintiff, an American corporation which owned the rig which had been damaged while being towed by the tug, "will be materially affected if the dispute is litigated in an English court" because certain exculpatory provisions in the contract "are apparently contrary to public policy and unenforceable in American courts." *Id.* at 895. The Court therefore concluded that remanding the plaintiff "to a foreign forum, with no practical contact with the controversy, could raise a bar to recovery by a United States citizen which its own convenient courts would not countenance." *Id.*[6]

---

**5.** Decisions by the former Fifth Circuit issued before October 1, 1981, are binding as precedent in the Eleventh Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981).

**6.** The Middle District in *Mutual Service* found *Unterweser* to be distinguishable because in that case, the purpose of the injunction was "to prevent 'inequitable hardship' and frustration of the domestic court's policies regarding

After the Fifth Circuit affirmed en banc, the Supreme Court vacated the judgment and remanded the case, finding that "far too little weight and effect were given to the forum selection clause in resolving this controversy." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 8, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). The Court found that "[a] contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision," but found nothing in the record that would support the refusal to enforce the clause in that case, noting that the case the Fifth Circuit relied upon with respect to the exculpatory provisions did not apply. *Id.* at 15, 92 S.Ct. 1907 (citations omitted); *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–94, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) ("[A] clause establishing *ex ante* the forum for dispute resolution has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended ..."); *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1295 (11th Cir.1998) (noting that forum-selection and choice-of-law clauses are "presumptively valid where the underlying transaction is fundamentally international in character.")[7]; *Kirby v. Norfolk Southern Railway Co.*, 71 F.Supp.2d 1363 (N.D.Ga.1999) (recognizing Fifth Circuit

precedent, but distinguishing *Unterweser* and applying the restrictive approach because there was no forum selection clause involved in the case); *Manrique v. Fabbri*, 493 So.2d 437 (Fla.1986) (finding that forum selection clauses should be enforced absent evidence that they are unreasonable or unjust).

In the other Fifth Circuit case, *Bethell v. Peace*, 441 F.2d 495 (5th Cir.1971), the Court stated the "generally accepted rule" to be that:

> an American court will be willing to enjoin foreign proceedings which involve the same parties and the same cause of action: (1) where the foreign suit was brought by a resident of the forum state against another resident of the state to evade a protection provided for the latter under forum law * * * or where the foreign suit would be vexatious in other respects * * *."

*Id.* at 498 (citing Ehrenzweig, Conflicts of Law at 129–30 (1962)). The Court found that the plaintiff should not be subject to the expense and vexation of a Bahamian suit where, at the time it was deciding the motion for anti-suit injunction, the Florida federal district court had already declared the real estate contract at issue in the Bahamian suit to be invalid on its face. *Id.*[8] *See also Kaepa*, 76 F.3d at 627(noting that even though the standard in *Bethell* and *Unterweser* focused on the potentially

---

contracts," concerns the Court found were not present in the case before it. 805 F.Supp. at 924.

**7.** The presumption of validity can be overcome "by a clear showing that the clauses are 'unreasonable under the circumstances.'" *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1362–63 (2d Cir.1993) (citing *Bremen*, 407 U.S. at 10, 92 S.Ct. 1907). This can be demonstrated when "(1) their formation was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or

unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of such provisions would contravene a strong public policy." *Lipcon*, 148 F.3d at 1295. None of these circumstances exist in this case.

**8.** The *Mutual Service* court distinguished *Bethell* by noting that the foreign action was enjoined "to prevent relitigation of [an] issue decided on the merits." *Id.* at 922 n. 3.

vexations nature of foreign litigation, it "by no means excluded the consideration of principles of comity," but stating that the Court "decline[s] ... to require a district court to genuflect before a vague and omnipotent notion of comity every time that it must decide whether to enjoin a foreign action.")

This Court finds the Ninth Circuit's decision in *Gallo* instructive.[9] There, the plaintiff sought a preliminary anti-suit injunction against its Ecuadorian distributor, Andina Licores ("Andina"), which had brought suit in Ecuador in violation of the parties' distribution agreement that specified California as the exclusive forum for all litigation. 446 F.3d at 987–88. Andina's claims in Ecuador were based on a revoked Ecuadorian law which was designed to protect Ecuadorians that were agents, distributors, or representatives of foreign companies. *Id.* at 987. The district's court's denial of an anti-suit injunction was reversed by the Ninth Circuit, which determined that if any of the four factors announced in *Unterweser* were met, "and if the impact on comity is tolerable," the injunction should have been granted. *Id.* at 991. The court initially analyzed whether the parties and the claims were the same, and found that they were, noting that in the Ecuadorian court, Andina sued for breach of contract, and in the district court, Gallo sought, *inter alia,* a declaration that Gallo did not breach the distributorship agreement. *Id.* The court additionally noted that to the extent that Ecuadorian law would apply, the federal court would be capable of applying it to the defendant's claims pursuant to Fed. R.Civ.P. 44.1. *Id.*

The court then discussed the importance of the forum selection clause, noting the Supreme Court's decisions in *M/S Bremen* and *Carnival,* and determined that "[w]ithout an anti-suit injunction in this case, the forum selection clause effectively becomes a nullity." *Id.* at 992; *see also Paramedics,* 369 F.3d at 652 (affirming anti-suit injunction where foreign proceedings breached an arbitration clause). After noting that the defendant "ha[d] not given any reason to set aside the forum selection clause," the court held that defendant's "pursuit of litigation in Ecuador, in violation of the forum selection clause, frustrates a policy of the United States courts and may well be vexatious and oppressive." *Id.* at 993. *See also Farrell Lines, Inc. v. Columbus Cello–Poly Corp.,* 32 F.Supp.2d 118 (S.D.N.Y.1997), *aff'd,* 161 F.3d 115 (2d Cir.1998).

■ This Court finds that it is bound by *Unterweser* to follow the liberal approach, given the existence of the forum selection clause. The Court further finds that the suit by Lantech frustrates the policy of the United States courts of enforcing forum selection clauses. Lantech attempts to distinguish its situation, by noting that it filed the Costa Rica action first. However, the Court finds that Lantech's filing of the Costa Rica action had the evasive effect of attempting to avoid the forum selection clause of the Agreement in the first instance. The Court further rejects Lantech's argument that the forum selection clause has no nexus to the Costa Rican statutory claim, in that Paragraph 19 of the Agreement provides that "*ALL SUITS COMMENCED BY DISTRIBUTOR AGAINST CANONLAT UPON ANY AND ALL CAUSES OF ACTION, WHETHER OR NOT SUCH CAUSES OF ACTION HAVE ARISEN UNDER THIS AGREEMENT AND REGARD-*

---

9. The Court agrees with *Lantech* that the Ninth Circuit in *Gallo* was presented with actions on the part of the defendant which created a more vexatious situation than that involved in the instant case, but does not find that this renders the case inapplicable.

*LESS OF THE LEGAL THEORY UPON WHICH SUCH CAUSES OF ACTION ARE BASED,* SHALL BE BROUGHT EXCLUSIVELY IN A STATE OR FEDERAL COURT SITUATED WITHIN THE STATE OF FLORIDA." (emphasis added).

The Court also finds merit in Canonlat's argument that the suit is vexatious due to the one million dollar bond that it had to post in order to avoid losing its right to import its products into Costa Rica.[10]

Lantech argues that an injunction should not issue because Canonlat has not met the initial requirements of the parties and actions being sufficiently similar. The Court disagrees with *Lantech* that the parties must be "identical," despite the use of that term by the Court in *Mutual Service.* Indeed, in one of the cases the court cites for that proposition, *Cargill, Inc. v. Hartford Accident and Indemnity Co.,* 531 F.Supp. 710, 715 (D.Minn.1982), the parties were not "identical," in that there was a party in the United States action which was not a party in the foreign action. Other cases have allowed injunctions where the parties were "substantially similar," or where the "primary parties" are the same. *See, e.g., International Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.,* No. 05 CIV. 2745(LAK), 2006 WL 2060463, *5 (S.D.N.Y. July 26, 2006) (finding requisite similarity exists "[w]here parties to the two actions are affiliated or substantially similar, such that their interests are represented by one another"); *Paramedics Electromedicina Comercial Ltda., v. GE Medical Systems*

*Information Technologies, Inc.,* No. 02 Civ. 9369(DFE), 2003 WL 23641529 (S.D.N.Y. June 4, 2003), *amended in part,* No. 02 Civ. 9369(DFE), 2003 WL 21697884 (S.D.N.Y. July 21, 2003), *aff'd,* 369 F.3d 645 (2d Cir.2004) (holding identity of party requirement satisfied where subsidiary corporation that allegedly acted as agent for defendant was named in foreign suit, but no independent claim was alleged against it); *Motorola Credit Corp. v. Uzan,* No. 02 Civ. 666(JSR), 2003 WL 56998, *2–3 (S.D.N.Y. Jan.7, 2003); *MasterCard Int'l. Inc. v. Argencard Sociedad Anonima,* No. 01 CIV. 3027(JGK), 2002 WL 432379, *10 (S.D.N.Y. March 20, 2002) (holding identity of party requirement satisfied despite intervention of an additional party in foreign proceeding since party was not a necessary party to the action).

In this case, although SB Technology is an additional party named in the Costa Rica action, there are no independent claims made against it. Rather, liability is alleged based on the following Article of Law 6209:

**Article 6. (Individual or corporation that partially or wholly assumes any business activity, which was performed previously by a foreign company through a representative, distributor or manufacturer. Liability).** The individual or corporation that partially or wholly assumes any business activity which was previously conducted by a foreign company through a representative, distributor or manufacturer shall be responsible for the continuity of the representation, distribution or manufacturing agreement, unless the foreign

---

**10.** Even if Court were to apply the more limited concerns raised in *Mutual Service,* an injunction would be proper; the action in Costa Rica does threaten this Court's jurisdiction, in that the choice of law provision provides that litigation as to all disputes between the parties, whether under the agreement or not, be litigated in Florida courts and in accordance with Florida law.

company had previously covered the pertinent indemnity.

See CR Compl. p. 21, ¶ Tenth. Assuming this Article would apply to SB Technology, it can only be held liable for indemnity if Canonlat is held liable and fails to fully indemnify Lantech. Furthermore, if SB Technology is jointly and severally liable, as Lantech alleges, then Lantech can still pursue the claim against SB in Costa Rica. This Court finds that the existence of SB Technology as a party to the Costa Rica action should not prevent the issuance of an antisuit injunction.

Lantech also argues that the claims are not similar, describing its action as one "premised on statutory violations of the Law for Protection of Foreign Company Representatives" (Law No. 6209) and its status as a public policy statute. Lantech claims that the Costa Rica Action is not an action for breach of contract and that the proceedings are, therefore, not "the same." Although it may be true that a written contract is not necessary for the enforcement of an exclusive distribution arrangement under that law, the Costa Rican complaint is replete with references to the Agreement, which is attached as an exhibit. In that complaint, Lantech alleges that the Agreement "includes several paragraphs which violate the law for Protection of Foreign Company Representatives" (Compl. p. 2, ¶ Third). Lantech requests that the court declare that Canonlat "terminated the distribution relationship." (Compl. p. 23, ¶ Fifth) and find that para-

graphs 11 and 19 of the Agreement are "null and void." (Compl. p. 26, ¶ Twenty–First).[11] Therefore, the effect and enforceability of the Agreement are placed directly at issue in the Costa Rican action, and this Court finds that the actions are sufficiently similar.[12]

■ To the extent that Lantech suggests that enjoining the action will deprive it of rights under a Costa Rican statute which represents a policy to protect private companies, that argument is rejected. By freely entering into the Agreement which contained the choice of forum and law provisions, Lantech itself chose to not avail itself of the protection of litigating its action in a Costa Rican forum. On remand in *Gallo*, the California district court noted:

Andina's hope is that it might recover damages according to the formula specified by Decree No. 1038–A, which allegedly awards damages in an amount equal to the product of total yearly payments under the contract times the number of years the contract was in effect. That Andina would be forced to forego the possibility of a damage award that is so far removed from any reasonable concept of damages is hardly a depravation of legal remedy. The fact the forum or choice of law specified by a contract affords remedies that are different or less favorable to the laws of the forum preferred by a plaintiff is not alone a valid basis to deny enforcement

**11.** Additionally, Canonlat points out that Lantech, in its Costa Rican complaint, also includes several common law theories as an alternative remedy or basis for recovery. *See* Affidavit of Lupita Quintero, Reply, Ex. B.

**12.** This Court acknowledges that some courts have stated an additional requirement that the action in the enjoining court must be

dispositive of the action in the foreign court. This Court finds that because of the significant overlap of issues in this case, the policy at issue, that is, the enforcement of a forum selection clause, as well as the limited scope of the injunction requested, the lack of this additional factor is not dispositive.

of the forum selection and choice of law provisions.

440 F.Supp.2d 1115, 1127 (E.D.Cal.2006). Similar reasoning applies in this case. Furthermore, Lantech has not demonstrated that this Court is unable to apply Costa Rican law. *See Forzley v. AVCO Corp. Electronics Div.*, 826 F.2d 974 (11th Cir.1987).[13]

## CONCLUSION

The Court finding that the relevant criteria for issuance of an antisuit injunction exist, and being otherwise fully advised in the premises, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Second Renewed Motion for Preliminary injunction is hereby **GRANTED**; and

2. Lantech is hereby enjoined from taking any action in furtherance of the Costa Rica proceeding until the time this Court determines whether the Agreement's choice of law and forum selection provisions are valid and enforceable, and a further order is entered by the Court.[14]

---

13. Additionally, Lantech's conclusory allegation that in the instant case, SB Technology "is not likely subject to this Court's jurisdiction" is unpersuasive.

14. The Court acknowledges that SB Technology is also involved in that litigation. However, as explained infra, based on the theory on which Lantech is proceeding, SB Technology can only be held liable if Canonlat is determined to be liable. Because litigation of that issue is precisely what this Court is enjoining by this Order, Lantech must be enjoined from proceeding in any manner in the Costa Rica case.