**SEATTLE TOTEMS HOCKEY CLUB, INC., Eldred W. Barnes and Vincent H. D. Abbey, Plaintiffs-Appellees,**

v.

**The NATIONAL HOCKEY LEAGUE, et al., Defendants,**

**Northwest Sports Enterprises, Ltd., Defendant-Appellant.**

**No. 79–4209.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 7, 1981.

Decided Aug. 3, 1981.

Frederic C. Tausend, Seattle, Wash., argued, for defendant-appellant; James M. Rupp, Rex Stratton, Schweppe, Doolittle, Krug, Tausend & Beezer, Richard S. White, Seattle, Wash., on brief.

Wayne R. Parker, Midway, Wash., for plaintiffs-appellees.

Before WRIGHT, POOLE, and NORRIS, Circuit Judges.

NORRIS, Circuit Judge:

This appeal arises out of a private antitrust action brought in federal district court by appellees Vincent Abbey and Eldred Barnes, owners of the Seattle Totems, an ice hockey team in the now-defunct Western Hockey League. Named as defendants were the National Hockey League (NHL), Northwest Sports, owners of the Vancouver Canucks of the NHL, and various League officers and club owners. The suit charges defendants with unlawful monopolization of the ice hockey industry in North America and seeks, among other relief, to have certain agreements between Abbey and Barnes and Northwest Sports relating to the sale and management of the Seattle Totems declared void and unenforceable.[1]

Approximately twenty-seven months after the filing of the antitrust action, Northwest Sports sued Abbey and Barnes in British Columbia Supreme Court for damages for breach of the same agreements that are being challenged as illegal and unenforceable in the appellees' antitrust action in federal district court. Abbey and Barnes then moved in the federal court action to enjoin Northwest Sports from prosecuting its contract claim in British Columbia on the ground that the claim constitutes a compulsory counterclaim to plaintiffs' antitrust complaint and must be pleaded in the pending federal antitrust action in Washington. The district court granted plaintiffs' motion and issued the injunction against prosecution of the Canadian suit. Northwest Sports appeals pursuant to 28 U.S.C. § 1292(a)(1).

I.

Northwest Sports does not deny that under Federal Rule of Civil Procedure 13(a) its contract claim would constitute a compulsory counterclaim in the pending antitrust action. Rather, it contends that Canadian law, and not Rule 13(a), governs the determination whether the contract claim is compulsory and that Canadian law would not require Northwest Sports to plead its claim as a compulsory counterclaim in the pending antitrust suit. In concluding that Rule 13(a) governs, the district court below relied on the general choice of law principle, restated in § 122 of the Restatement (Second) of Conflict of Laws (1971), that a court will apply its own rules of procedure to regulate the conduct of litigation before it.[2] See also Bournias v. Atlantic Maritime Co., 220 F.2d 152, 154 (2nd Cir. 1955). Northwest Sports argues, however, that this general rule is inapplicable because the issue in question is "one whose resolution would be

---

1. The agreements called for Abbey and Barnes to sell to Northwest Sports 55% of the Totems and to pay Northwest Sports 44.44% of all moneys expended by Northwest Sports in the operation of the Totems franchise. The agreements also called for Abbey and Barnes to repurchase all the shares held by Northwest Sports in the Totems if the NHL granted the Totems an NHL franchise.

The agreements were executed in Vancouver, and paragraph 18 of the agreement which Abbey and Barnes allegedly breached provided that "[t]his agreement shall be interpreted in accordance with the laws of the Province of British Columbia."

2. Restatement (Second) of Conflict of Laws § 122 (1971) states:

A court usually applies its own local law rules prescribing how litigation shall be conducted even when it applies the local law rules of another state to resolve other issues in the case.

likely to affect the ultimate result of the case." Restatement (Second) of Conflict of Laws § 122, Comment a (1971). We find this argument without merit.

The issue before this court is not whether Canadian law governs the interpretation or the validity of the agreements between Northwest Sports and appellees, but rather whether all claims arising out of these agreements should be heard in a single forum. A determination that appellant's claim is a compulsory counterclaim which must be pleaded in the district court of Washington cannot reasonably be expected to affect the merits of appellant's contract claim.[3] Moreover, the Supreme Court has emphasized the federal courts' overriding interest in applying their own rules of procedure and has indicated that in federal court the Federal Rules of Civil Procedure will almost invariably be applied if there is a Federal Rule governing the point in dispute. *See Hanna v. Plumer,* 380 U.S. 460, 469–74, 85 S.Ct. 1136, 1142–46, 14 L.Ed.2d 8 (1965); *see also TPO Inc. v. Federal Deposit Ins. Corp.,* 487 F.2d 131, 133–34 (3d Cir. 1973) (in a diversity action, Fed.R.Civ.P. 13(a) relating to compulsory counterclaims applies without reference to conflicting state rule); *Tolson v. Hodge,* 411 F.2d 123, 125–29 (4th Cir. 1969) (same).

■ Northwest Sports nevertheless argues that Canadian law is controlling because (1) the parties designated Canadian law as the law to be applied to the contract, and (2) Canada is the jurisdiction with the most significant relationship to the transaction. However, as noted above, the controlling choice of law principle is that a court's own local rules will be applied to determine how litigation shall be conducted. Appellants have failed to demonstrate why this principle is inapplicable in this case. Accordingly, we conclude that the district court properly looked to Fed.R.Civ.P. 13, and not Canadian law, to determine whether a defendant's contract claim must be pleaded as a compulsory counterclaim in the federal antitrust action pending before it.

## II.

■ Federal Rule of Civil Procedure 13(a) requires a defendant in federal court to state as a counterclaim any claim he may have against the plaintiff that "arises out of the transaction or occurrence that is the subject matter" of the plaintiff's claim.[4] The purpose of requiring a defendant to assert his claim as a counterclaim in a pending action is "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." *Southern Construction Co. v. Pickard,* 371 U.S. 57, 60, 83 S.Ct. 108, 110, 9 L.Ed.2d 31 (1962). The Rule bars a party who failed to assert a compulsory counterclaim in one action from instituting a second action in which that counterclaim is the basis of the complaint. *See Southern Construction Co. v. Pickard,* 371 U.S. at 60, 83 S.Ct. at 110; *Wright & Miller,* Federal Practice and Procedure, Civil §§ 1417–1418 (1971). It is well-settled that in order to enforce this bar, a federal court may enjoin a party from bringing its compulsory counterclaim in a subsequent *federal* court action. *See, e. g., Warshawski & Co. v. Arcata Nat. Corp.,* 552 F.2d 1257 (7th Cir. 1977); *Columbia Plaza Corp. v. Security Nat.*

3. Nor, we might add, do we perceive any unfairness to Northwest Sports in applying the Federal Rules to the question before us. While the parties apparently expected the contract to be interpreted in accordance with the laws of British Columbia, it is not reasonable to assume that the parties expected Canadian law to be applied to the procedural question whether an action for breach of the contract would be a compulsory counterclaim in a pending antitrust suit in a United States district court. *See* Restatement (Second) of Conflicts of Laws § 122, Comment a (1971).

4. Fed.R.Civ.P. 13(a) provides:

"A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action...."

*Bank,* 525 F.2d 620 (D.C.Cir.1975); *Scott & Fetzer Co. v. McCarty,* 450 F.Supp. 274 (N.D.Ohio 1977). Northwest Sports maintains, however, that the district court abused its discretion by restraining Northwest Sports from proceeding in the courts of a *foreign* country in order to enforce the dictates of Rule 13(a) and avoid duplicative litigation. We disagree.

■ A federal district court with jurisdiction over the parties has the power to enjoin them from proceeding with an action in the courts of a foreign country, although the power should be "used sparingly." *Philp v. Macri,* 261 F.2d 945, 947 (9th Cir. 1958). "The issue is not one of jurisdiction, but one . . . of comity." *Canadian Filters Ltd. v. Lear Siegler, Inc.,* 412 F.2d 577, 578 (1st Cir. 1969). *See also Chase Manhattan Bank v. State of Iran,* 484 F.Supp. 832, 836 (S.D.N.Y.1980).[5]

*In re Unterweser Reederei Gmbh,* 428 F.2d 888 (5th Cir. 1970), *aff'd on rehearing en banc,* 446 F.2d 907 (1971), *rev'd on other grounds sub nom. Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), is instructive. In that case, a federal district judge enjoined Unterweser Reederei from proceeding in the High Court of Justice in London, England on a claim that had been pleaded as a counterclaim in an action already pending in federal district court. In affirming the district court's issuance of the injunction, the Fifth Circuit noted that foreign litigation may be enjoined when it would (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing courts in rem or quasi in rem jurisdiction; or (4) where the proceedings prejudice other equitable considerations. It then went on to hold that "allowing simultaneous prosecution of the same action in a foreign forum thousands of miles away would result in 'inequitable hardship' and 'tend to frustrate and delay the speedy and efficient determination of the cause.' " *Id.* at 896, quoting *In re Unterweser Reederei, Gmbh,* 296 F.Supp. 733, 735–36 (M.D.Fla.1969).[6]

---

5. The Anti-Injunction Statute, 28 U.S.C. § 2283, removes from the federal courts the equitable power to grant injunctions to stay state court proceedings "except as expressly authorized by Act of Congress or where necessary in aid of its jurisdiction or to protect or effectuate its judgments." Rule 13(a) has been held not to create an express statutory exception to the proscriptions of § 2283 and, accordingly, a federal court is barred by § 2283 from enjoining a party from proceeding in state court on a claim that should have been pleaded as a compulsory counterclaim in a prior federal suit. *See e. g., Nolen v. Hammet Co., Inc.,* 56 F.R.D. 361, 362 (D.S.C.1972); *see also* 6 C. Wright & A. Miller, Federal Practice and Procedure, § 1418 at 106. It should be emphasized, however, that Congress has not removed from the federal courts the power to enjoin parties subject to their jurisdiction from proceeding in the courts of a foreign country, leaving the decision to enjoin such actions squarely within the discretion of the district courts.

6. *In re Unterweser Reederei, Gmbh, supra,* arose as the result of a towing accident in which a drilling barge owned by the Zapata Off-Shore Company (Zapata) was damaged while being towed by a tug owned by Unterweser Reederei (Unterweser). Both Zapata and Unterweser brought suit in federal district court in Florida: Zapata, for damages to his barge, Unterweser, for an exoneration and limitation of liability arising from the mishap and, by way of counterclaim, for moneys owed under the towage contract. Unterweser also brought an action under the contract in the High Court of Justice. This action enjoined by the district court, and the Fifth Circuit affirmed.

In *Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), however, the Supreme Court reversed. The Court noted that the Zapata-Unterweser towage contract contained a clause providing that any dispute arising from the contract must be litigated in the High Court of Justice in London and concluded that in view of the forum-selection clause, the federal district court erred in not declining jurisdiction on the basis of the doctrine of *forum non conveniens.* The Court did not, therefore, reach the question of the propriety of issuing an injunction when the district court properly had jurisdiction prior to the filing of a foreign action and no forum selection clause existed. *Cf. In re Unterweser Reederei, Gmbh,* 428 F.2d 888, 896, 912 (5th Cir. 1970 Wisdom, J., dissenting) (contending that the district court action should have dismissed in view of the forum selection clause, but conceding that if the district court properly retained jurisdiction, the injunction refraining Unterweser from proceeding in the English courts was proper.

Similarly, in *Bethell v. Peace*, 441 F.2d 495 (5th Cir. 1971), a federal district court held that a land-sale contract executed in Florida between Florida residents involving land in the Bahamas was invalid, and issued an injunction restraining the defendant from prosecuting an action in the Bahamas to quiet title. The Fifth Circuit affirmed, holding that it was within the district court's discretion to enjoin the foreign suit where the action would relieve the moving party "of the expense and vexation of having to litigate in a foreign court." *Id.* at 498. *See also Gage v. Riverside Trust Co.*, 86 F. 984 (C.C.S.D.Cal.1898) (defendants restrained from proceeding with an action in the courts of England on a claim raising issues already pending in federal court). *Cf. Sperry Rand Corp. v. Sunbeam Corp.*, 285 F.2d 542 (7th Cir. 1960) (reversing order enjoining plaintiff from bringing foreign suit where disposition of the action in federal court would not dispose of the issues raised in the foreign action and where there was no evidence that the foreign litigation was vexatious or harassing).

In the case before us, the validity of the 1972–74 agreements will be a central issue in both the Canadian and American litigations. Adjudicating this issue in two separate actions is likely to result in unnecessary delay and substantial inconvenience and expense to the parties and witnesses. Moreover, separate adjudications could result in inconsistent rulings or even a race to judgment.

In granting the injunction against Northwest Sports, the district court noted that it had considered the relevant factors, including "the convenience to the parties and witnesses, the interest of the courts in promoting the efficient administration of justice, and the potential prejudice to one party or the other," and concluded that the equitable balance weighs heavily in favor of plaintiffs, Abbey and Barnes. It also concluded that the policies animating Rule 13(a) and the rationale of the cases upholding injunctions against subsequently-filed *federal* court actions applied with equal force to this case where the compulso-

ry counterclaim was brought in the courts of Canada. In view of these policies and cases, we cannot say that the district court abused its discretion by enjoining Northwest Sports from prosecuting its contract claim in Canadian court.

AFFIRMED.