**MICROSOFT CORPORATION,
a Washington corporation,
Plaintiff,**

v.

**LINDOWS.COM, INC., a Delaware
corporation, Defendant.**

**No. C01–2115C.**

United States District Court,
W.D. Washington,
At Seattle.

April 2, 2004.

Bruce Braun, Dan K. Webb, Winston & Strawn, Chicago, IL, Karl Justin Quackenbush, Marc C. Levy, Preston Gates & Ellis, Timothy LeRoy Boller, William O. Ferron, Jr., Seed Intellectual Property Law Group PLLC, Seattle, WA, for Plaintiff.

Karin Bornstein Swope, Yarmuth Wilsdon Calfo PLLC, Seattle, WA, Q. Huy D. Do, Clifford Chance US, Palo Alto, CA, for Defendant.

Daniel R. Harris, Clifford Chance Rogers & Wells, Palo Alto, CA, Scott T. Wilsdon, Yarmuth Wilsdon Calfo PLLC, Seattle, WA, Johanna Calabria, Clifford Chance US, San Francisco, CA, for Defendant and Counter Claimant.

Karl Justin Quackenbush, Preston Gates & Ellis, Seattle, WA, for Plaintiff and Counter Defendant.

## ORDER

COUGHENOUR, Chief Judge.

This matter comes before the Court on Defendant Lindows.com's Motion for Anti–Suit Injunction and Declaration of Non–Enforceability of Foreign Interim Order (Dkt. No. 328). Upon due consideration of the written and oral arguments of the parties, the Court now enters its Order DENYING Lindows.com's Motion as set forth herein.

### I. Background

The dispute between Lindows.com and Microsoft Corporation ("Microsoft") is no longer just a domestic affair. Although Lindows.com's products have been previously available to international consumers

through its website, international demand prior to 2002 can be described as negligible at best. Presumably hoping to capture a greater share of the world market, at some point between 2002 and 2003 Lindows.com began to appoint local distributors for its products in other countries. Tracking these developments, Microsoft filed suit against Lindows.com to protect its foreign-registered trademarks in Finland, France, Sweden, the Netherlands, Canada, Mexico, Spain and the European Community, and has threatened suit in South Africa. Courts in both Finland and Sweden have granted Microsoft preliminary injunctive relief, however neither court required Lindows.com to block online access to its website.

On January 29, 2004, the Netherlands District Court in Amsterdam granted Microsoft's request for a preliminary injunction and enjoined Lindows.com's sale and distribution of Lindows products within the Benelux countries. The injunction also ordered Lindows.com to "render [its] web site(s)...including but not limited to the web site at URL *http://www.lindows.com* inaccessible to visitors from Belgium, the Netherlands, and Luxembourg." (*See* Harris Decl. at Ex. 8; Meijboom Decl. at App. E.) Microsoft, alleging that Lindows.com failed to comply with the preliminary injunction, filed a second suit in the Netherlands District Court to obtain compliance. It was at this point that Lindows.com apparently suspended all commercial activity in the Benelux countries, including blocking sales of Lindows products in and to the Benelux countries, and posting a warning to Benelux visitors on its website. The hearing before the Dutch court, scheduled for March 30, 2004, to assess Lindows.com's compliance with the preliminary injunction has been continued at the request of the parties.[1]

Despite this continuance, Lindows.com moves this Court for two forms of relief: an anti-suit injunction prohibiting Microsoft from continuing to pursue its foreign litigation, and a declaration of non-enforceability of the Dutch court's preliminary injunction.

## II. Analysis

### A. Anti–Suit Injunction

■ It is with grave reluctance that this Court approaches the request to inject itself into the proceedings of the court of another sovereign nation. Although federal courts have the power to enjoin parties from proceeding with foreign litigation, this power should be "used sparingly." *Seattle Totems Hockey Club v. Nat'l Hockey League,* 652 F.2d 852, 855 (9th Cir.1981) (*citing Philp v. Macri,* 261 F.2d 945, 947 (9th Cir.1958)). Despite Lindows.com's attempt to frame the issue as one of personal jurisdiction over the parties, issuing an anti-suit injunction necessarily restricts the jurisdiction of the court of a foreign sovereign. Considerations of international comity are therefore the cornerstone of this Court's analysis.

Comity is based on respect for the sovereignty of other states or countries. The United States Supreme Court has treated it as "neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other." *Hilton v. Guyot,* 159 U.S. 113, 163–64, 16 S.Ct. 139, 40 L.Ed. 95 (1895); *See also In re Simon,* 153 F.3d 991, 998 (9th Cir.1998). Rather "it is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protections of

---

1. This continuance has no bearing on the Court's position on this matter.

its laws." *Hilton,* 159 U.S. at 164, 16 S.Ct. 139. The rationale for this deference lies in the inescapable reality that sovereign nations exist within a broader international community. As one Circuit elegantly wrote:

> [T]he central precept of comity teaches that, when possible, the decisions of foreign tribunals should be given effect in domestic courts, since recognition fosters international cooperation and encourages reciprocity, thereby promoting predictability and stability through satisfaction of mutual expectations. The interests of both forums are advanced-the foreign court because its laws and policies have been vindicated; the domestic country because international cooperation and ties have been strengthened. The rule of law is also encouraged, which benefits all nations.

*Laker Airways Ltd. v. Sabena, Belgian World Airlines,* 731 F.2d 909, 937 (D.C.Cir.1984). These interests are not to be taken lightly. *See Gebr. Eickhoff Maschinenfabrik Und Eisengieberei mbH v. Starcher,* 174 W.Va. 618, 328 S.E.2d 492, 505 (1985) (stating "in the final analysis, the authority of the forum court having personal jurisdiction over a foreign national must prevail in order to preserve the interests of the forum state and it citizens.").

■ Against this backdrop the Court considers Lindows.com's request for an anti-suit injunction. An injunction is appropriate only in cases where the parties are the same, the issues are the same, and resolution of the U.S. action will be dispositive of the action to be enjoined. *Sun World, Inc. v. Lizarazu Olivarria,* 804 F.Supp. 1264, 1267 (E.D.Cal.1992). Once the threshold requirements have been met, an anti-suit injunction is appropriate in circumstances where the foreign litigation would "(1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's in rem or quasi in rem jurisdiction; or (4) where the proceedings prejudice other equitable considerations." *Seattle Totems,* 652 F.2d at 855. Other factors the Court may consider include whether separate adjudications could result in inconsistent rulings or a "race to judgment," and whether "adjudicating the issue in two separate actions is likely to result in unnecessary delay and substantial inconvenience and expense to the parties and witnesses." *Id.* at 856.

■ The weight of the authority on the subject supports a finding that a trademark dispute is not the "same" for purposes of an anti-suit injunction. *See, e.g., Person's Co. v. Christman,* 900 F.2d 1565, 1569 (Fed.Cir.1990) (remarking "trademark rights exist in each country solely according to that country's statutory scheme"); *Osawa & Co. v. B & H Photo,* 589 F.Supp. 1163, 1171 (S.D.N.Y.1984) (observing "a trademark has a separate legal existence under each country's laws"); 4 J. Thomas McCarthy, *McCarthy on Trademarks* § 29:1 at 29–4 (4th ed.1996) (stating "a trademark is recognized as having a separate existence in each sovereign territory in which it is registered or legally recognized as a mark."). *See also Canadian Filters (Harwich) Ltd. v. Lear–Siegler, Inc.,* 412 F.2d 577, 579 (1st Cir.1969) (vacating anti-suit injunction in case involving independent foreign patent right); *Berkshire Furniture Co. v. Glattstein,* 921 F.Supp. 1559 (W.D.Ky.1995) (holding anti-suit injunction not warranted in action to enforce design registration issued in foreign country); *Black & Decker Corp. v. Sanyei Am. Corp.,* 650 F.Supp. 406, 409–10 (N.D.Ill.1986) (declining to enjoin foreign suit for infringement of intellectual property rights). Additionally, the United States is a member of the Paris Union and a signatory of the Paris Convention, the

principal international treaty governing patents, trademarks and unfair competition. The Convention "is not premised upon the idea that the trademark laws of each member nation shall be given extraterritorial application, but on exactly the converse principle that each nation's law shall have only territorial application." 4 *McCarthy on Trademarks* § 29:25 at 29–5. Faced with an absence of precedent for an order enjoining foreign trademark litigation, the Court finds no reason to interfere with the judicial proceedings of other sovereign nations. Lindows.com's request for an anti-suit injunction must be denied.

The Court is mindful of the hardship this finding may impose on Lindows.com. However, the Court understands that Microsoft will file no new foreign lawsuits if Lindows.com engages in no new foreign marketing of its products. (*See* Dkt. No. 342, Tr. at 31 ("[W]hat Microsoft would be willing to do is not to bring any new actions if Lindows agrees not to create any new infringements.").) The Court further cautions the parties that engaging in litigation strategies that may be appropriate in other countries may not reflect well on counsel who must still practice before this Court.[2]

### B. Non–Enforceability Declaration

■ The same concerns of international comity counsel against issuing a declaration of non-enforceability. Lindows.com argues that shutting down its website entirely is the only technologically feasible way to comply with the Dutch preliminary injunction's demand that Lindows.com render its web site inaccessible to visitors from the Benelux countries. Such an effect, Lindows.com argues, violates the company's First Amendment rights since the website contains both expressive and informative speech, and some protected commercial speech. Lindows.com urges the Court to interpret the Dutch preliminary injunction as requiring 100% inaccessibility. This the Court is unwilling to do. It is uncertain at this point whether the Dutch court would be willing to accept the use of available commercial software that would allow Lindows.com to block users from accessing its website from a Benelux address. The Court will not impose its own interpretation on the Dutch court's preliminary injunction and block its enforceability in the United States without a clear demonstration of constitutional violation.

■ That being said, there are limitations to the application of comity. *Laker Airways*, 731 F.2d at 937–38 (observing "the obligation of comity expires when the strong public policies of the forum are vitiated by the foreign act."). Should the Dutch court decide that compliance with its preliminary injunction can only be accomplished by the extraordinary act of shutting down the Lindows.com website, comity may no longer stay the Court's hand. It is well-established that neither a rule of customary international law nor a provision of a treaty, and by logical extension a foreign court order, can abrogate a right granted under the Constitution. *See Reid v. Covert*, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957). Indeed, our sister court in California has held it "may not enforce a foreign order that violates the protections of the United States Constitution by chilling protected speech that occurs simultaneously within our borders." *Yahoo!, Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 169 F.Supp.2d 1181, 1192 (N.D.Cal.2001), *appeal docketed*, No. 01–17424. Yet, this Court will not

---

**2.** For example, the Court views the use of *ex parte* proceedings in foreign courts with consternation, since similar proceedings are justified in the United States only under the most exceptional circumstances.

**1224**

impose such a drastic reading of the Dutch Court's order without first allowing that court to clarify its intentions. "Considerations of courtesy and mutuality require our courts to construe domestic legislation in a way that minimizes interference with the purpose or effect of foreign law." *Grunfeder v. Heckler,* 748 F.2d 503, 509 (9th Cir.1984). This Court has every reason to expect that similar considerations will guide the reasoning of the Dutch court.

The Court is also satisfied that Microsoft will not seek such drastic relief from the Dutch court since Microsoft has clearly represented to this Court that it is not the company's intention to shut down the Lindows.com website. (*See, e.g.,* Dkt. No. 342, Tr. at 24; Pl.'s Mem. in Opp. to Def.'s Mot. at 3, 10–11.) If rendering the website 100% inaccessible is impossible, then Microsoft has stated it will not ask Lindows.com to render it completely inaccessible. (Dkt. No. 342, Tr. at 24 ("[T]he Dutch court is not going to require [Lindows.com] to do something that's impossible, and Microsoft's not asking them to do something that's impossible.").) Microsoft further asserts it will be satisfied with use of existing commercial software. (*Id.* ("[Making the website inaccessible to Benelux visitors is] something that can be practically accomplished with commercial software relatively inexpensively, and we'll put that evidence on in Amsterdam.").) In the absence of a demonstrable constitutional violation, and in light of Microsoft's representations that it will not seek relief that requires Lindows.com to shut down its website, the Court finds it inappropriate to declare at this time that the Dutch court's preliminary injunction is not enforceable.

---

**3.** During oral arguments, the Court queried whether it should rescind certification of its February 10, 2004, Order to the Ninth Circuit. The Court declines to take any such action at this time.

## III. Conclusion

For the aforementioned reasons, Lindows.com's Motion for Anti–Suit Injunction and Declaration of Non–Enforceability is hereby DENIED.[3]