**In re Jerry L. ICENHOWER dba Seaview Properties, and Donna L. Icenhower, Debtors.**

**Kismet Acquisition, LLC, a Delaware limited liability company, Successor–in–Interest to Gerald H. Davis, Chapter 7 Trustee, Plaintiff,**

v.

**Jerry L. Icenhower, an individual; et al., Defendants.**

**Bankruptcy No. 03–11155–A7.**
**Adversary Nos. 04–90392–A7, 06–90369–A7.**

United States Bankruptcy Court, S.D. California.

Dec. 12, 2008.

Ali M.M. Mojdehi, Christine E. Baur, Janet D. Gertz, Baker & McKenzie LLP, San Diego, CA, for Plaintiffs.

Jerry L. Icenhower, Coronado, CA, pro se.

Donna L. Icenhower, Coronado, CA, pro se.

Robert L. Rentto, Law Offices of Robert L. Rentto, Geraldine A. Valdez, Jeffrey Isaacs, Procopio, Cory, Hargreaves and Savitch, Stephen B. Morris, Morris and Associates, Alan Vanderhoff, Vanderhoff Law Group, D. Anthony Gaston, D. Anthony Gaston, Attorney at Law, David J. Noonan, Kirby Noonan Lance & Hoge LLP, San Diego, CA, Ronald White, Gardena, CA, for Defendants.

Johnstown Enterprises, LLC, a Nevada limited liability company, pro se.

Buckeye International Funding, Inc., a Nevada corporation, pro se.

Western Financial Assets, Inc., a Nevada corporation, pro se.

Does 1 through 50, inclusive, pro se.

Columbus Enterprises, LLC, a Nevada limited liability company, pro se.

Newark Enterprises, LLC, a Nevada limited liability company, pro se.

## *MEMORANDUM DECISION*

LOUISE DeCARL ADLER, Bankruptcy Judge.

### I.

### INTRODUCTION

In an Order to Show Cause, Kismet Acquisition, LLC ("Kismet") asks this Court to enter a permanent foreign anti-suit injunction ("OSC re: Anti–Suit Injunction") against defendants Alejandro Diaz–Barba and his mother, Martha Barba de la Torre (the "Diaz Defendants"). The Diaz Defendants are Mexican nationals who own real and personal property in the United States. Kismet is the successor-in-interest to all of the assets of the bankruptcy estate of Jerry and Donna Icenhower ("Debtors"), having purchased them from the chapter 7 trustee ("Trustee"). Kismet, as the successor to the Trustee, obtained a judgment from the Court against the Diaz Defendants for avoidance and recovery of a fraudulent transfer and a postpetition transfer of the Debtors' beneficial interest in a *fideicomiso* trust holding title to coastal real property in Mexico. The Amended Consolidated Judgment directs the Diaz Defendants to take all actions necessary to cause the Villa Property

to be reconveyed to a *fideicomiso* trust naming Kismet as its beneficiary ("Amended Consolidated Judgment").[1]

The Diaz Defendants refused to comply with the Amended Consolidated Judgment. They engaged in a series of actions in Mexico intended to attack the Amended Consolidated Judgment and to render their performance legally impossible.[2] Kismet wants the transfer ordered by the Amended Consolidated Judgment performed, and the activities in Mexico stopped. Accordingly, it has asked this Court to issue an anti-suit injunction permanently enjoining the Diaz Defendants and anyone having an "identity of interest" with them from taking any actions to attack, vitiate or nullify the Amended Consolidated Judgment, except for filing a direct appeal of the Amended Consolidate Judgment in the U.S. Although this is certainly a case where the litigation in Mexico is vexatious and oppressive, the Court must deny the request.

## II.

## FACTS

### A. Events Prior to Bankruptcy.

Prior to 1997, the Debtors engaged in a business transaction in Mexico with the D. Donald Lonie, Jr., Family Trust (the "Lonie Trust") concerning the beneficial interest in the *fideicomiso* trust that owned the Villa Property. A dispute arose between the Debtors and the Lonie Trust, and the Lonie Trust initiated an action against the Debtors in the United States District Court for the Southern District of California seeking, *inter alia*, a determination of the parties' respective rights and interests in the Villa Property and injunctive relief (the "district court action").

During the pendency of the district court action, the Debtors secretly transferred their beneficial trust interest to their wholly-owned corporation, Howell & Gardner Investors, Inc. ("H & G") for no consideration. The district court was unaware of the transfer. It issued a judgment against the Debtors which directed them to either (1) pay monetary damages to the Lonie Trust and re-register a lien on the Villa Property as security for the damages until paid; or (2) reconvey their beneficial interest in the Villa Property to the Lonie Trust, free of any encumbrance, claim, lien, or liabilities.

### B. Events in this Bankruptcy Case.

In response to the district court judgment, the Debtors filed this voluntary chapter 7 bankruptcy case on December 15, 2003. The Debtors first disclosed their interest in the Villa Property at their § 341(a) meeting on January 12, 2004. The Debtors did not disclose that Mr. Icenhower was in the process of negotiating a further transfer of the Villa Property from H & G to the Diaz Defendants.

On August 23, 2004, the Trustee filed a fraudulent conveyance action to avoid and recover the Debtors' transfer of their interest in the Villa Property. Additionally, the Trustee obtained a temporary restraining order and preliminary injunction

---

1. Under Mexican law, a foreign national may not directly hold title to coastal real property in Mexico, but may hold the beneficial interest in a *fideicomiso* bank trust formed to hold title to the real property. The Debtors owned a beneficial interest in a *fideicomiso* trust which held title to the real property commonly known as the Villa Vista Hermosa ("Villa Property"). Hereinafter, all references to the Villa Property refer to the Debtors' beneficial trust interest unless otherwise specified.

2. These actions resulted in a citation for contempt, and the issuance of other OSCs re: Contempt, which are more fully described below.

prohibiting the defendants from transferring or encumbering the Villa Property. The Trustee did not name the Diaz Defendants in the Complaint because he was unaware that H & G had already transferred the Villa Property to the Diaz Defendants. Upon learning about H & G's transfer, the Trustee amended the Complaint to include this subsequent transfer to the Diaz Defendants, and he obtained additional injunctive relief restraining the Diaz Defendants from further transferring or encumbering the Villa Property. Additionally, on August 3, 2006, the Trustee filed an action for alter ego and for substantive consolidation of the Debtors and H & G *nunc pro tunc* to the petition date, and to avoid and recover H & G's unauthorized postpetition transfer of the Villa Property to the Diaz Defendants (collectively "Avoidance Actions").[3]

The Trustee was in the process of negotiating a settlement of the Avoidance Actions when Kismet purchased the Lonie Trust's claims in this bankruptcy case.[4] Thereafter, Kismet negotiated an agreement with the Trustee to purchase all of the estate's assets, including the Avoidance Actions, in exchange for Kismet's payment in full of administrative expenses and allowed general unsecured claims, except Kismet's own claims which it agreed to subordinate ("Purchase Agreement"). The Purchase Agreement was noticed to all creditors, including the Diaz Defendants, and was subject to overbid. There were no overbids. The Purchase Agreement was

approved by the Court by order entered December 7, 2006.[5] Pursuant to the Purchase Agreement, Kismet was substituted into the Avoidance Actions in place of the Trustee as the real party-in-interest.

Kismet is a limited partnership formed by non-Mexican nationals to develop real estate projects in Mexico. The Court understands that Kismet's goal in pursuing the Avoidance Actions is to recover the Villa Property to include it in a larger development project. The Court understands that Kismet attempted to negotiate a consensual sale of the Villa Property without success. It saw an opportunity to acquire the Villa Property through these bankruptcy proceedings.

## C. The Amended Consolidated Judgment and the Acts of Contempt

After a five day trial in the Avoidance Actions, the Court issued Consolidated Findings of Fact and Conclusions of Law ("FFCL") finding, *inter alia*, that H & G was Debtors' alter ego; that the Debtors' bankruptcy estate and H & G should be substantively consolidated *nunc pro tunc* to the petition date; that the transfer from Debtors to H & G was an avoidable fraudulent conveyance; that the transfer from H & G to the Diaz Defendants was an avoidable postpetition transfer; and that the avoided transfers could be recovered from the Diaz Defendants who were *not* good faith transferees.[6] The Consolidated

---

**3.** The Avoidance Actions were consolidated for purposes of trial because of their related factual issues. Hereinafter, all docket entries will refer to Adv. Proc. 04–90392, unless otherwise specified.

**4.** Notice of Assignment/Transfer of Claims, Main Case, D.E. # 83.

**5.** Main Case, D.E. # 95 (attaching Purchase Agreement).

**6.** D.E. # 503. The Diaz Defendants' due diligence confirmed the prior transfers of the Villa Property were consistent with Mexican law and the title was free of any liens or encumbrances in the public records of Mexico. However, the Court found the Diaz Defendants were actually aware of the claims of the Lonie Trust and the Trustee to the Villa Property and there were so many other "red flags" that they could not possibly be good faith transferees under U.S. law.

Judgment directed the Diaz Defendants to take all actions necessary to execute and deliver any and all documents necessary to unwind the avoided transfer and to cause the Villa Property to be reconveyed to a *fideicomiso* trust naming Kismet as the sole beneficiary.[7]

On motion by Kismet, the Court entered an order clarifying the Consolidated Judgment by, *inter alia*, affirming that the preliminary injunction entered in the Avoidance Actions would continue in effect until the Diaz Defendants fully complied with the Consolidated Judgment.[8] On motion of the Diaz Defendants, the Court once again amended the Consolidated Judgment to clarify that references to the "Villa Property" means the beneficial interest held in the *fideicomiso* trust holding title to the Villa Property.[9] The Amended Consolidated Judgment was appealed to the U.S. District Court, which denied the Diaz Defendants' request for a stay pending appeal on September 3, 2008.

At that point, the Diaz Defendants had ten days to take the actions necessary to reconvey the Villa Property to Kismet. The Diaz Defendants' efforts to resist compliance became the subject of an OSC re: Failure to Comply with Amended Consolidated Judgment.[10] After extensive and somewhat tumultuous discovery efforts, which included a motion to compel filed by Kismet at a hearing held November 13, 2008, the Court found the Diaz Defendants in contempt of court, ordering compensatory and compulsory sanctions for their continuing failure to comply with the terms of the Amended Consolidated Judgment.[11] The basis for this finding was a clear and convincing record of efforts by the Diaz Defendants to intentionally delay performance of the Amended Consolidated Judgment in the U.S., so they could *create* impediments in Mexico to the transfer ordered in the Amended Consolidated Judgment, including:

· Soliciting and drafting multiple declarations and an opinion from officials in the Mexican Ministry of Foreign Affairs ("Ministry") and other members of the executive branch denouncing the legality in Mexico of the transfer ordered in the Amended Consolidated Judgment.[12]

· Soliciting officials in another department of the Ministry to take various actions to block Kismet's application for a *fideicomiso* trust permit.[13] Because of the Diaz Defendants' actions to block the granting of a permit to Kismet or any of its principals, Kismet has nominated a Mexican corporation, Axolotl Inmobiliaria, S. de R.L. De C.V. ("Axolotl"), to be the beneficiary of the *fideicomiso* trust to sidestep the permit requirement.

· Denouncing Kismet's principals in correspondence directed to the president of Mexico, the Honorable Felipe Calderon.[14]

· Denouncing the development activities of Kismet's principals, and inciting public anger towards Kismet's principals through an advertisement broadcast ap-

---

7. D.E. # 504 (entered June 2, 2008).

8. D.E. # 514 (entered June 16, 2008).

9. D.E. # 530 (aka the "Amended Consolidated Judgment"). This clarification was already contained in the FFCL at footnote 4.

10. D.E. # 575.

11. D.E. # 710; D.E. # 719.

12. *See e.g.*, Decl. of J. Gertz, D.E. # 649 at Exs.14, 15, 16, 17, 18, 19, 20, 22, 23, 27, 29, 30, 31, 36.

13. *See e.g.*, *Id.* at Exs. 18, 23, 24, 25, 26, 27, 28, 30, 31, 36, 37, 38, 39, 40, 45.

14. *See e.g.*, Decl. of E.Bustamante., D.E. # 648, at Exs. "B"-"C".

proximately every 30 minutes on a Mexican radio station.[15]

· Filing in the Fifth District Court in Civil Matters in Jalisco an *amparo* (constitutional proceeding) and *incidente de suspension* (ancillary proceeding) to temporarily "attach" the Villa Property with the equivalent of a self-imposed injunction or *lis pendens* to block the ability of the Diaz Defendants to transfer the property.[16] The Diaz Defendants recognized they could not obtain a final *suspension* (permanent injunction), so they considered registration of the *amparo* at the Public Recorder's Office in Mexico to cloud title to the Villa Property.[17]

· Falsely representing in the *amparo*, that the Amended Consolidated Judgment seeks to assert *in rem* authority over the Villa Property in violation of the Mexican law and the Mexican Constitution, and that Kismet had commenced proceedings in Mexico to homologate and enforce the Amended Consolidated Judgment.[18]

· Instigating attempts by Mexican consular officials to contact this Court *ex parte* after entry of the Amended Consolidate Judgment.

· Issuing and circulating to various officials a *Narrativa de Injusticia* which recites the history of Mr. Diaz's involvement with Mr. Icenhower, his version of the rulings in the Avoidance Actions, and his view of the principals of Kismet and of this Court.[19] The tone of the *Narrativa de Injusticia* is designed to cast negative aspersions on the proceedings and disrepute on this Court to garner sympathy for the supposed wrongs to them.[20]

---

**15.** *See* Decl. of J. Gertz, D.E. # 572 at ¶ 6; *but see* Decl. of A. Diaz, D.E. # 58lat ¶ 8 (admitting to publicly denouncing Kismet's principals, but denying responsibility for the radio broadcasts). The Court notes that the Diaz family has been in the broadcasting business for around 20 years, including owning and operating several radio stations in Mexico. Mr. Diaz continues to jointly own a radio station in Jalisco, Chamela. *See* Decl. of J. Gertz, D.E. # 634 at Ex. 6. Mrs. Barba Diaz continues to serve as the President of a radio station started by her late husband, which broadcasts classical music in Tijuana and San Diego. *See* Trial Transcript, D.E.# 555 at 335–38. Given the Diaz Defendants' connections in radio broadcasting and their other conduct in these Avoidance Actions, the Court finds plausible the possibility of the Diaz Defendants orchestrating these broadcasts.

**16.** Decl. of J. Gertz, D.E. # 649 at Exs. 53, 57, 59, 60, 61; *See also* Decl. of E. Bustamonte, D.E. # 648 at ¶ 8.

**17.** *See e.g.*, Decl. of J.Gertz, D.E. # 649 at Ex. 59; *see also* Decl. of E.Bustamonte, D.E. # 648 at ¶ 8.

**18.** Decl. of J. Gertz, D.E. # 649 at Ex. 14 (English translation); Decl. of E. Bustamante at ¶ 8. As more fully discussed below, the Court did not enter an *in rem* judgment voiding title to the Villa Property. It expressly limited its jurisdiction to an *in personam* order directing the Diaz Defendants to reconvey the Villa Property.

**19.** *See e.g.*, Decl. of J. Gertz, D.E. # 649 at Exs. 4, 9.

**20.** A translation of a small part of the *Narrativa de Injusticia* illustrates its inflammatory nature:

> **The Attitude of Judge Adler Towards Mexico**
>
> On various occasions, Judge Adler has expressed her disdain for Mexico, and it is evident that she has no respect for the laws of Mexico nor for its legal process....
>
> Judge Adler orders us, under threat of the contempt powers, which include fines, the loss of our properties in the U.S. and even possibly the loss of liberty, to hand over our property to a German.... She wants us to give the companies owned by this German, who is not a citizen of the US, not even a U.S. taxpayer our Mexican property. Why does she put herself at the service of this over-bearing and aggressive German? This German whose ambition and motivation should be more than obvious ... *[See* Dec. of J. Gertz, D.E. # 634 at Ex. 5, p. 000003 (English translation) (emphasis in original).]

· Raising frivolous objections to documents prepared by Kismet to effectuate the transfer of the Villa Property. As revealed in emails produced during discovery, these objections were not raised in good faith but were raised to delay execution of the transfer documents while the Diaz Defendants instigated actions in Mexico to cloud the title to the Villa Property and render the transfer of the Villa Property "impossible." [21]

As of this date, there are at least two other contempt proceedings pending: (1) a *Sua Sponte* Expanded OSC re: Contempt to hold the Diaz Defendants' attorneys jointly and severally liable for compensatory damages awarded to Kismet due to their active participation in the Diaz Defendants' acts of contempt; [22] and (2) an OSC re: Contempt to hold the Diaz Defendants in contempt for actions taken in violation of the Continuing Preliminary Injunction. [23] This second OSC re: Contempt involves an allegation that the Diaz Defendants caused the Villa Property to be forcibly "seized" through use of armed guards, thereby making it unavailable to Kismet and its nominee, Axolotl, even though the transaction, on paper, has now closed. [24]

**D. The Request for a Permanent Anti-Suit Injunction.**

Understandably, Kismet is concerned about its ability to protect and preserve the benefits of the Amended Consolidated Judgment in Mexico. Accordingly, in addition to citing the Diaz Defendants for their continuing acts of contempt, Kismet requested the Court to issue the OSC re: Anti–Suit Injunction, commanding the Diaz Defendants to appear before the Court and show cause why:

[A] foreign antisuit injunction should not now issue against the Diaz Defendants, ... along with their, agents, servants and employees, and attorneys, and such other persons who are in active concert or participation with any of them, would:

(i) be permanently prohibited and enjoined from, **directly or indirectly, initiating, maintaining, continuing, or taking any actions that directly or indirectly conflict with, constitute an attack upon, or seek to vitiate or nullify this Court's Amended Consolidated Judgment, in any jurisdiction, including without limitation** in the courts of the United Mexican States. Provided however, that the Diaz Defendants shall not be precluded thereby from pursuing their direct Appeal of the Amended Consolidated Judgment, which Appeal is currently pending in the United States District Court for the Southern District of California; and

(ii) be ordered immediately to withdraw or to cause the withdrawal of any such actions that are now pending, including, without limitation, (i)theAmparo, (ii) the *Incidente de Suspension;* and (iii) the Guillermo Rivera Proceeding, and any and all effects of each of the same.

(Emphasis added). [25]

## III.

### DISCUSSION

 It is well established among the courts of appeals that federal courts have

---

This Court has never expressed disdain for Mexico or its laws.

**21.** *See e.g.,* Decl. of J. Gertz, D.E. # 649 at Exs. 43, 45, 54, 56, 57.

**22.** D.E. # 672.

**23.** D.E. # 716.

**24.** *Id.*

**25.** D.E. # 636.

the power in appropriate cases to enjoin foreign suits by persons subject to federal court jurisdiction. *Canon Latin America, Inc. v. Lantech,* 508 F.3d 597, 601 (11th Cir.2007) (citations omitted); *E. & J. Gallo Winery v. Andina Licores S.A.,* 446 F.3d 984, 989 (9th Cir.2006); *Seattle Totems Hockey Club, Inc. v. National Hockey League,* 652 F.2d 852, 855 (9th Cir.1981). The injunction operates *inpersonam;* the U.S. court enjoins the litigants, not the foreign court. *Gallo,* 446 F.3d at 989; *Seattle Totems,* 652 F.2d at 855. However, the power to issue a foreign anti-suit injunction should be "used sparingly." *Seattle Totems,* 652 F.2d at 855 (citing *Philp v. Macri,* 261 F.2d 945, 947 (9 th Cir. 1958)). Principles of comity counsel that injunctions restraining foreign litigation should be "granted only with care and great restraint." *Paramedics Electromedicina Comercial, Ltda v. GE Medical Systems Information Technologies, Inc.,* 369 F.3d 645, 652 (2nd Cir.2004) (internal quotation marks and citation omitted).

█ The Ninth Circuit has identified two threshold criteria to determine whether a foreign anti-suit injunction should issue: (1) whether the parties and the issues are the same in both the foreign and domestic lawsuits; and (2) whether resolution of the case before the enjoining court is "dispositive of" the action to be enjoined. *Gallo,* 446 F.3d at 991; *Canon Latin America,* 508 F.3d at 601. If these threshold requirements are satisfied, the court must then consider additional equitable factors to determine whether issuing an anti-suit injunction is appropriate in that case. *See Gallo* at 991 (first determining the threshold criteria was met; then considering additional equitable factors); *Canon Latin America* at 601 ("[o]nce these threshold requirements are satisfied,

courts must then consider additional factors ...").

█ The other equitable factors include whether the foreign litigation would: (1) frustrate a policy of the forum issuing the anti-suit injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's *in rem* or *quasi in rem* jurisdiction; or (4) prejudice other equitable considerations. *Gallo* at 989–91; *Seattle Totems,* 652 F.2d at 855. The factors are disjunctive: if any of the four factors is present, an antisuit injunction *may* be proper. *Gallo* at 990. Finally, the Ninth Circuit instructs that the court must necessarily consider concerns of international comity to determine if an anti-suit injunction should issue. *Id.* An anti-suit injunction should issue only if the court determines "the impact on comity [is] tolerable." *Id.* at 994.

In the present case, the Court concludes it cannot issue a foreign anti-suit injunction because the threshold criteria are not met. As such, it cannot consider any of the equitable factors which would likely weigh in favor of issuing an anti-suit injunction. Even if an anti-suit injunction were otherwise appropriate, concerns of international comity counsel against an anti-suit injunction in this case.

## A. The Parties and Issues are Not the Same.

█ First, it is clear that the parties in any adjudication before the Mexican courts will not be the same as the parties in these Avoidance Actions. Because of the Diaz Defendants' activities in Mexico prejudicing Kismet's application for a *fideicomiso* trust permit, Kismet assigned its right to receive the beneficial trust interest to Axolotl, a Mexican corporation whose shareholder ownership and degree of relatedness to Kismet is unknown.[26]

---

**26.** Kismet assigned only the right to receive the beneficial trust interest. Kismet retained

Kismet believes a *fideicomiso* trust permit is unnecessary if the trust beneficiary is Axolotl. As such, any challenges to the legality of the transfer in Mexico will necessarily involve Axolotl, the trust beneficiary, as an additional party. Axolotl was not a party to the Avoidance Actions, and it had no involvement in these actions. *Cf. Garpeg Ltd. v. U.S.,* 583 F.Supp. 789, 798 (S.D.N.Y.1984) (holding the anti-suit injunction was improper where the parties to the foreign court had not asserted claims against each other in the domestic action).

Kismet recognizes the "persons" to be enjoined in Mexico are not the same parties as in the Avoidance Actions. However, its analysis focuses on the Diaz Defendants and those having an "identity of interest" with them. Kismet's list of additional persons to be enjoined is potentially limitless. It enjoins persons over whom this Court has no direct *in personam* jurisdiction. Further, the scope of enjoined "actions" is *not* limited to legal actions in the Mexican courts. Arguably, it would enjoin officials of the Mexican government from carrying out their official duties in a manner offensive to Kismet.[27] The Court finds the scope of enjoined persons and enjoined actions overly broad. However, it need not reach this issue because the introduction of Axolotl as the trust beneficiary adds a new necessary party with different legal rights.

■ Even if the addition of Axolotl were ignored, the second threshold requirement is not met. This requirement looks to the claims that were litigated in the U.S. court to determine if they are "dispositive of"

the claims to be enjoined in the foreign court. *Gallo,* 446 F.3d at 991. In the Ninth Circuit, this requirement is met if: (1) the litigation to be enjoined constitutes a "compulsory counterclaim" which must be pled in the U.S. litigation pursuant to Federal Rule of Civil Procedure 13(a). *Seattle Totems,* 652 F.2d at 853 and 856; or (2) the substance of both actions is the same claim even though the foreign action involves a claim for violation of a foreign statute. *Gallo,* 446 F.3d at 991(finding the two actions involved the "same claims" because the substance of Andina's Ecuadorian court action for violation of Decree 1038–A was breach of contract, and the substance of Gallo's claim in the U.S. action was for, among other things, a declaration that Gallo did not breach the contract). However, *Gallo's* liberal "same claims" finding is tempered by the circuit's observation that Andina did not appear to have *any claims* under Ecuadorean law. *Id.* at 991. The parties had agreed to a forum selection clause and a choice of law clause in favor of California, which the court in Ecuador had already upheld as valid. *Id.* at 988, 991.

In this case, Kismet has not examined the substance of both actions to determine if they are the same. Kismet's argument is simply that the Amended Consolidated Judgment is "final and fully enforceable." It is thus *res judicata* with respect to any actions by the Diaz Defendants in Mexico which would seek to "threaten, paralyze, thwart, or evade" the Amended Consolidated Judgment. [*Ex Parte* Application at 16:17–25]

---

all other rights under the Amended Consolidate Judgment.

27. *See* Section II.D., *supra* (setting forth the scope of enjoined "actions" as including "any actions that directly or indirectly conflict with, constitute an attack upon, or seek to

vitiate or nullify this Court's Amended Consolidated Judgment, in any jurisdiction, *including without limitation* in the courts of the United Mexican States ...." (emphasis added)). [D.E. # 636]

The doctrine of *res judicata* bars a party from bringing the same claim in subsequent litigation if a court of competent jurisdiction has rendered a final judgment on the merits of this claim in a previous action involving the same parties or their privies. *In re Intl. Nutronics, Inc.*, 28 F.3d 965, 969 (9th Cir.1994). The doctrine bars all grounds for recovery that *could have been asserted,* whether they were or not, in a prior suit between the same parties on the same cause of action. *Intl. Nutronics,* 28 F.3d at 969. Factors to consider in determining whether successive suits involve the same causes of action are: (1) whether the rights or interests established would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. *Id.* at 970 (citing *Clark v. Bear, Stearns & Co.*, 966 F.2d at 1320).

In this case, factors (1), (2) and (4) are met. The litigation in Mexico most definitely threatens to "paralyze, thwart, or evade" the rights that Kismet received under the Amended Consolidated Judgment. The two actions will involve substantially the same evidence, except there will now be evidence concerning Axolotl's ownership and the effect of its status as a Mexican corporation. And, except for the evidence concerning Axolotl, the two suits arise out of the same transactional nucleus of facts.

However, the third factor is not met because the Court finds the two suits do not involve infringement of the *same rights.* The issues actually adjudicated in the Avoidance Actions were questions of property of the bankruptcy estate, substantive consolidation, avoidance and recovery of an unauthorized postpetition transfer and avoidance and recovery of a fraudulent transfer. These are "core" bankruptcy-created claims over which this Court has exclusive jurisdiction. 28 U.S.C. §§ 1334(b) and (e); 28 U.S.C. §§ 157(b)(1)(2)(E), (H) and (O). The Court did *not* make any legal conclusions concerning whether its Amended Consolidate Judgment is enforceable in Mexico. Further it did *not* directly adjudicate title to the Villa Property under Mexican law. It was unnecessary to delve into the messy area of directly adjudicating title to real property located in a foreign country because the Court had personal jurisdiction over the Diaz Defendants to order them to reconvey the Villa Property. *See Perry v. O'Donnell,* 749 F.2d 1346, 1351 (9th Cir. 1985) (noting it is "well settled that although a court may have in personam jurisdiction to order one of the parties to convey to the other party a deed to property in [the Bahamas], it cannot directly affect or determine title to that real property"); *see also Fall v. Eastin,* 215 U.S. 1, 9–12, 30 S.Ct. 3, 54 L.Ed. 65 (1909); *but see* 28 U.S.C. § 1334(e)(creating the legal fiction that property of the estate—regardless of its actual location—is located within the jurisdictional boundaries of the district in which the court sits). There can be no doubt concerning this Court's ruling since it expressly stated:

> The Court makes no legal conclusion concerning whether its consolidated judgment in these actions is enforceable in Mexico. As this Court previously ruled, it has subject matter jurisdiction over claims to avoid and recover the wrongful transfer of the Debtors' interest in the *fideicomiso* trust, and it has *in personam* jurisdiction over each of the Defendants in these actions to *order them to execute the necessary conveyance documents* to return the Villa Property to the estate, subject to enforcement through this Court's contempt

powers, even though it indirectly affects title to real property in Mexico.

[CL at ¶ 108 (emphasis in original) ] [28]

▆▆▆▆ In contrast, the Mexican litigation will adjudicate the status of the title to the Villa Property based upon Mexican Statutes and the Mexican Constitution. The Diaz Defendants contend their status as Mexican nationals affords them special protections in this purchase transaction. Further, they contend the *Calvo* clause [29] and Mexican real estate law require that any actions by the parties challenging the title of the Villa Property must be litigated in Mexico and exclusively governed by Mexican law. Finally, the Diaz Defendants contend the Amended Consolidated Judgment must be homologated [30] in order for real property located within Mexico's restricted coastal zone to be *legally* transferred pursuant to a U.S. Bankruptcy Court's order. The Court did not adjudicate these substantive rights in the Avoidance Actions.

The Amended Consolidated Judgment does not bar the Diaz Defendants from litigating their different substantive rights in the courts in Mexico. Kismet's argument that *res judicata* bars any subsequent litigation because it will "threaten, paralyze, thwart, or evade" the Amended Consolidated Judgment is misplaced. *Res*

*judicata* is not implicated when the litigation in the foreign country involves different substantive claims.

## B. The Impact on International Comity Must Always be Considered.

Finally, the Court rejects Kismet's argument that in circumstances where the litigation to be enjoined is "vexatious and duplicative," concerns of comity [31] are given "little or no weight." [*Ex Parte* Application at 17:13–22] The Ninth Circuit has never held that concerns of comity are to be given "little or no weight."

In *Seattle Totems*, the Ninth Circuit cautioned that the power to issue a foreign anti-suit injunction should be "used sparingly." *Seattle Totems*, 652 F.2d at 855 (quoting *Philp v. Macri*, 261 F.2d 945, 947 (9 th Cir.1958)). It explained that " '[t]he issue is not one of jurisdiction, but one . . . of comity.' " *Id.* (quoting *Canadian Filters, Ltd. v. Lear–Siegler, Inc.*, 412 F.2d 577, 578 (1st Cir.1969)). The Ninth Circuit cited to cases which recognize that preventing vexatious or oppressive litigation is an equitable factor to consider in deciding whether to issue an anti-suit injunction. *Id.* at 855–56. However, *Seattle Totems* involved an argument that the litigation in Canada was *duplicative* of the U.S. litiga-

---

**28.** D.E. # 503; *see also* D.E. # 504.

**29.** The *Calvo* clause is a doctrine of Mexican law which holds that judgments rendered by foreign courts purporting to affect title to real property in Mexico are unenforceable as against the public interest in Mexico, and contrary to the exclusive sovereignty of Mexico over its realty. In essence, it is an automatic forum selection clause in favor of Mexico.

**30.** This is the procedure in Mexico to domesticate a foreign judgment.

**31.** "Comity" summarizes in a brief word a complex and elusive concept—it is the degree of deference that a domestic forum must pay

to the act of a foreign government not otherwise binding on the forum. *Gallo*, 446 F.3d at 995 (citing *Laker Airways Ltd. v. Sabena Belgian World Airlines*, 731 F.2d 909 (D.C.Cir. 1984)). Comity has been described as the "mortar" which "cements together" our international system. *Id.* at 995 (quoting *Laker Airways*, 731 F.2d at 937) It is not a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, on the other hand. The obligation of comity expires when the strong policies of a forum are vitiated by the foreign act. *Gallo* at 994 (citing *Hilton v. Guyot*, 159 U.S. 113, 163–64, 16 S.Ct. 139, 40 L.Ed. 95(1895)).

tion, not that it was vexatious or oppressive. The Ninth Circuit left unanswered the question of the weight to be given to international comity. *See Gallo* at 990 (noting that *Seattle Totems* left unanswered the question of the weight to be given to international comity). Accordingly, *Seattle Totems* does not hold that in circumstances of vexatious or oppressive litigation, comity is to be given "little or no weight."

In contrast, *Gallo* involved a situation where the litigation in Ecuador was potentially prejudicial, vexatious and oppressive. The Ninth Circuit began its discussion by observing that an anti-suit injunction "presents particularly complex legal issues, especially because of international comity concerns." *Gallo*, 446 F.3d at 989. Again it cautioned that the power should be "used sparingly," explaining the issue is "not one of jurisdiction, but one of comity." *Id.* at 990 (citing *Seattle Totems* at 855). The Ninth Circuit first applied the threshold requirements to determine they were met. *Id.* at 991. Then, it found additional equitable factors weighed heavily in favor of granting the injunction, finding both that an anti-suit injunction was the only way that Gallo could effectively enforce the forum selection clause in favor of California, and that Andina had engaged in potentially fraudulent conduct and procedural machinations in Ecuador. *Id.* at 991–93.

Notwithstanding its findings, the Ninth Circuit recognized that it "still needed to decide whether the impact on comity would be tolerable." *Id.* at 994. The Ninth Circuit discussed the differing views among the circuits as to the relative importance of comity in deciding whether to issue an anti-suit injunction. *Id.* at 995. It declined to express an opinion concerning the degree of weight afforded to international comity because it concluded the facts supported an anti-suit injunction "un-

der any test." *Id.* (citing to the presence of messy, protracted litigation in Ecuador in direct contravention of a valid and enforceable forum selection clause in favor of California).

In this case, we do not have litigation between parties who contractually agreed to a forum selection clause and choice of law clause in favor of the U.S. We have a dispute between Mexican nationals and non-Mexican nationals over coastal real property located within the restricted coastal zone of Mexico. The dispute implicates unique areas of Mexican law which substantively differ from the issues this Court considered in the Avoidance Actions. The justification to enjoin litigation of these rights in the courts of Mexico is that the litigation is "vexatious and oppressive." While there is little doubt that the litigation is vexatious and oppressive, Kismet's cry for equitable assistance rings upon deaf ears where Kismet chose to involve itself in this dispute. Kismet made a business decision to acquire the Villa Property through these bankruptcy proceedings because it could not acquire it consensually. Kismet was *not* the actual victim of the frauds which this Court's Amended Consolidated Judgment sought to remedy.

Issuing an anti-suit injunction in the circumstances of this case would not be tolerable. It would send a message to Mexico that this Court has so little confidence in the courts in Mexico to adjudicate this dispute fairly and efficiently that it is unwilling to even allow the possibility. *See Gau Shan Company, Ltd. v. Bankers Trust Co.*, 956 F.2d 1349, 1355 (6th Cir. 1992). The expected consequence of such an order is that the Mexican courts would reciprocate with disrespect of the Court's Amended Consolidated Judgment, and reciprocity between the U.S. courts and the courts of Mexico would only suffer as a

**916**

result. *See Gau Shan Ltd.*, 956 F.2d at 1355. This Court is hopeful that the courts in Mexico will fairly and efficiently resolve the Mexican legal issues and reciprocate with respect for the Court's Amended Consolidated Judgment which is premised upon a factual finding that the Diaz Defendants were knowing participants in the Debtors' fraudulent scheme who could not possibly have purchased the Villa Property in good faith under U.S. law.

## IV.

### CONCLUSION

Kismet's request for a permanent anti-suit injunction is denied. The threshold requirements for issuing an anti-suit injunction are not met. As such, the additional equitable factors which would weigh in favor of issuing an anti-suit injunction are irrelevant. The Court rejects Kismet's argument that the Ninth circuit has given concerns of international comity "little or no weight" if the litigation to be enjoined is merely vexatious or duplicative. The Ninth Circuit has repeatedly recognized that anti-suit injunctions should be "used sparingly" and only if the impact on international comity would be tolerable. The Court concludes the impact on comity of issuing the requested permanent anti-injunction suit would not be tolerable given the circumstances of this case. The Diaz Defendants are directed to prepare and lodge an order in accordance with this Memorandum Decision within ten days of its entry.